WILLIAM POILLON et al., Respondents, *v.* CHARLES F. SECOR, Appellant.

One who, for a valuable consideration, authorizes the use of his name in a copartnership, as if he was a member thereof, is liable as a partner to a subsequent creditor of the firm; and this, although the creditor was ignorant of the arrangement, or that the name represented such nominal partner, and did not give credit on the faith of his apparent connection with the firm.

(Submitted September 21, 1874; decided January term, 1875.)

APPEAL from judgment of the Court of Common Pleas, in and for the city and county of New York, reversing a judgment in favor of the defendant, entered on the report of a referee.

This action was brought against the defendants as partners, alleged to be doing business under the firm name of " Secor, Swan & Co.," for goods purchased by that firm.

In the month of January, 1867, William H. Secor, Lydia H. Secor, Samuel Swan and William West were engaged in business in the city of New York, under the firm name of Secor, Swan & Co. In June of the same year, Lydia Secor retired from the firm, having sold out her interest to Samuel Swan, and the business was carried on by the remaining partners, under the same name, until the 2d day of December, 1867, when the firm was dissolved, and Wm. H. Secor retired from the business. On the last named day, those remaining members, Swan and West, entered into a written agreement to carry on a general business in smelting, assaying and

reducing ores, and analyzing minerals, etc.   The business was to be carried on under the name of Secor, Swan & Co. Cotemporaneously with this agreement, they entered into a written contract with defendant Charles F. Secor, in which, after a recital that Swan desired to continue the business of the old firm of Secor, Swan & Co., and that they had applied to Charles F. Secor, being a person well known as a worker of ores, for liberty to use his name for that purpose, it was agreed that, in consideration of the sum of $200, the said Charles F. Secor granted to Swan and Secor "leave, license, and liberty to use his name in their firm signatures, sign, advertisements, bill heads, and for all and every the business purposes of said firm of every kind and nature, so long as said firm shall remain in existence," etc.   The agreement further provided that Charles F. Secor should take the position of the superintendent of the works of the firm, at a stipulated compensation.   He had also been superintendent in charge of the works of a similar nature of the original firm of Secor, Swan & Co., but had no interest in the business.   The business of Swan and West was carried on under the above arrangement with Charles F. Secor, until the month of July, 1868, when the parties failed, and the business was discontinued.   In August, 1867, the plaintiffs opened an account with the firm of " Secor, Swan & Co.," which, from time to time, purchased goods on credit of the plaintiffs.   Of these goods, $379.35 in amount were delivered after December 2, 1867.

It was found by the referee that the plaintiffs had no knowledge of the agreement between Swan and West and the defendant Charles F. Secor, until after the goods had been delivered, and that no part of them were delivered on the faith of that agreement, nor on the faith, credit or general reputation that the said Secor was one of the members of the firm of Swan & West, or liable for its debts as partner or otherwise.

He found, accordingly, that Charles F. Secor was not, in law, a partner toward the plaintiffs, and that they were not

entitled to recover as against him the amount stated in the complaint, or any other sum.

Judgment was accordingly entered for the defendant Secor.

*Wilcox & Hobbs* for the appellant. There was no copartnership in fact as to the defendant Secor. (*Ogden* v. *Astor*, 4 Sandf., 311; *Humstreet* v. *Howland*, 5 Den., 68; *Merrick* v. *Gordon*, 20 N.Y., 93; *Burckle* v. *Eckhardt*, 3 id., 132; *Pattison* v. *Blanchard*, 5 id., 186; Colyer on Part., 43.) In order to recover of defendant Secor plaintiffs were bound to prove affirmatively that he represented himself as a partner to them, and that credit was given solely on these representations. (*Irvin* v. *Concklin*, 36 Barb., 64; *Bogart* v. *Lingo*, 3 Cal., 92; *Hopkins* v. *Smith*, 11 J. R., 161; *Burckle* v. *Eckhardt*, 3 N. Y., 132; *Vanderbergh* v. *Hall*, 20 Wend., 70.)

*Lewis O. Corbet* for the respondents. Persons may be held liable as partners as to third parties who would not be deemed partners as between themselves. (*Fitch* v. *Hall*, 16 How., 175; Pars. on Part., 63; Story on Part., § 64.) Defendant Secor was liable as a general partner to all persons dealing with the firm. (Pars. on Part., 120; Story on Part., § 64; *Burns* v. *Rowland*, 40 Barb., 360; *Conklin* v. *Barton*, 43 id., 435; *Vibbard* v. *Roderick*, 51 id., 616; *Goode* v. *Harrison*, 5 B. & Ad., 147; *Dickinson* v. *Valpy*, 10 B. & C., 138; *Waugh* v. *Carver*, 2 H. Bl., 235, 243; *Ex parte Watson*, 19 Ves., 461; *Young* v. *Axtell*, cited in H. Bl., 242; *Dolman* v. *Orchard*, 2 C. & P., 104; Laws 1849, chap. 370; Laws 1854, chap. 400; Laws 1863, chap. 144; 4 R. S. [Edm. ed.], 449, 452.) It was wholly immaterial whether plaintiffs had notice of any of the previous changes in the firm or of defendant Secor's special agreement as far as his liability was concerned. (*Guidon* v. *Robson*, 2 Camp., 302.)

Dwight, C. This case presents the question whether, if a person makes an agreement with two members of a firm, for a valuable consideration, to allow his "name to be used

in firm signatures, signs, advertisements, bill-heads, and for all and every the business purposes of the firm, so long as it remains in existence," thereby becomes a partner as to third persons who may have sold goods to the firm on credit, and who may not have known at the time of the sale what person was represented by the fictitious name.

The title assumed under this agreement was Secor, Swan & Co. There had been a Mr. William H. Secor, who had previously been a member of this firm when some goods were sold by the plaintiffs. When he left, the arrangement was made with Charles F. Secor to continue the business, making use of his name. After this arrangement, the goods, which are the subject of the present action, were sold. The referee who tried the cause, found that the plaintiffs did not sell or deliver the goods upon the faith or credit or reputation that Charles F. Secor, the defendant, was one of the members of the firm, or liable for its debts, and that he had no knowledge of the agreement until after the goods had been delivered. Under this state of facts, can it be claimed that Charles F. Secor is liable to the plaintiffs for the goods sold after the date of his agreement?

This point cannot be regarded as settled by the authorities, and can only be satisfactorily disposed of by discussing it upon principle. It is claimed, on behalf of the defendant, that the true ground on which a mere nominal partner is to be held liable to creditors of the firm is that of an estoppel *in pais;* and that it is a necessary element in such a case that a creditor of the firm should have parted with his goods, or have given it credit on the faith of the representations made by the nominal partner. It is cheerfully conceded that this rule is, in some instances, applicable. The real inquiry is, whether it must be extended to all cases. There are cases in which the doctrine of estoppel may be rested on broad grounds of public policy ; the present appears to be one of them. (1 Greenleaf on Evidence, § 210.) The sound rule would seem to be, that a person who deliberately agrees that his name shall be used in a partnership,

must be conclusively presumed to intend the consequences which naturally flow from such an act. It would be contrary to public convenience to require affirmative proof that dealers with the firm knew who was represented by the fictitious name. The referee, in the present case, did not find that the plaintiffs knew affirmatively that Charles F. Secor was not a member of the firm, but only that he did not know of the arrangement between the parties defendant, and did not act on the credit of his name. If this finding was sufficient to defeat the plaintiff's claim, a heavy burden would be thrown upon dealers with the firm. Suppose that one of them should die and his executor should prosecute his claim — should he be defeated because he could not prove directly that his testator knew what person was represented by the fictitious name?

In *Young* v. *Axtell* (cited in 2 H. Bl., 242), Lord MANSFIELD said, that the defendant Mrs. Axtell, as she suffered her name to be used and held herself out as a partner, was certainly liable, though the plaintiff did not at the time know that she was a partner or that her name was used. This case is approved by Mr. Lindley in his work on Partnership. He says: " It appears from this case that it is not necessary for a person charging a nominal partner, to have been aware of the partnership at the time of the contract. And this doctrine seems satisfactory when we consider that the object of the rule is to prevent *the extension of unsound credit.*" (Sec. 86.) This is a clear recognition of the element of public policy underlying the rule of Lord MANSFIELD.

This view is strengthened by the policy of our own statute against fictitious names, the use of them being made a crime. No more effectual mode of breaking up a pernicious practice upon this subject can be suggested, than for the courts to hold uniformly that parties allowing their names to be used as partners, shall be held to all the consequences fairly attributable to their acts, and to make them partners as to third persons, dealing with the firm, without

reference to their knowledge of the real facts in the case. Suppose that Swan, the other ostensible partner in this case, had also been a fiction, and that the only real dealer was West, represented by the letters " Co. ;" could it be tolerated that the men whose names appeared should escape all responsibility because a creditor could not show affirmatively, to the satisfaction of a referee or jury, that he reposed credit in the particular Mr. Secor or Swan, who had thus held himself out to the public?

It should be added that the only mode of giving true effect to Charles F. Secor's agreement, is to hold him responsible. The firm must have expected some practical result from the use of his name. They paid him a consideration for it. They must have understood that they were to gain an advantage from it. On the theory now advanced, nothing was to be accomplished. To those who did not know of Charles F. Secor's connection with the firm, he was not liable. To those who *did* know of his agreement, the same rule would have to be applied, as on account of knowledge there could be no estoppel. The only persons who could, under any circumstances, hold him liable, would be those who were aware of his being in some way connected with the firm, but did not know of the agreement under which he acted. To make the agreement of any advantage to dealers with the firm, its true nature must be studiously concealed from the parties intended to be affected by it. Such an exposition of the agreement is so plainly subversive of the policy of the law that it would not be fair to the parties to assume that they intended it. The reasonable construction of their agreement, in the absence of countervailing proof, is, that they intended it to be open and known to the public, and to have it accomplish its apparent purpose by pledging Mr. Secor's credit to their dealers. This construction makes the agreement accomplish its proper purpose, as it renders Mr. Secor responsible to every person dealing with the firm precisely as though he were an actual partner.

On the whole, we approve of the rule on this subject as it

is laid down by Mr. Parsons in his work on Partnership. He says: "When a creditor sues a firm, and seeks to put the liability of a partner upon one who is only a nominal partner, it is a somewhat difficult question whether the plaintiff can recover without proof that he himself believed the person whom he seeks to charge to be a partner. The authorities on this question are far from unanimous, some holding that one put forth to the world as a partner, is liable as such to every creditor of the firm ; while others hold that he is thus liable only because he was a partner in fact and in interest, or because the plaintiff regarded him as one, and dealt with the firm in some degree, at least, on his credit. Perhaps a reasonable rule might be stated thus : Where one is held forth to the world as a partner, the first question is, was he so held out by his own authority, assent or connivance, or by his negligence. If by his authority, consent or connivance, *the presumption is absolute* that he was so held out to every creditor or customer. If so held out by his own negligence only, he should be held only to a creditor who had been actually misled thereby." (Page 119.)

There was no error in the disposition of this cause in the court below, and the judgment should be affirmed.

All concur.

Order affirmed, and judgment accordingly.