By the Court.—Freedman, J.
The action was brought to recover an indebtedness of the firm of Leverich & Co. of Hew York to the plaintiff’s assignor, John J. Pringle. Henry S. Leverich was sought to be held on the ground that, even if he was not a partner in fact, he had held himself out as such. At the trial evidence was given on both sides, and at the close of the case the complaint was dismissed as to the defendant Henry S. Leverich, and plaintiff’s request to be allowed to go to the jury as against him was denied, which rulings were duly excepted to. The evidence clearly established that the said defendant had never been a partner in fact. A finding to the contrary could not be sustained even if it had been made. It, therefore remains to be considered whether there was anything in the conduct of Henry S. Leverich which would have justified the imposition of a liability as a partner on the ground that he had held himself out as such. > The evidence shows in substance as follows: In 1851 or 1852, John J. Pringle, plaintiff’s .assignor, commenced to have business transactions with Charles P. and Henry S. Leverich, not as constituting any firm, but as individuals. They had no firm-name and signed their names separately. The transactions were had sometimes with one, and sometimes with the other, and they continued at' intervals, and consisted of consignments of cotton and sugar, against the proceeds of which Pringle drew. Charles P. Leverich had also charge of a large amount of securities belonging to Pringle’s wife, and as to them Pringle kept an account with him which, upon the death of Charles P. Leverich, was transferred to Henry *92 S. Leverich, and kept distinct from all other transactions.
The firm of Leverich & Co. was formed in 1867. It then consisted of Charles D. and Edward Leverich. In about 1869, Stephen Duncan Leverich came in as the third partner. Charles D. and Stephen D. were the sons of Charles P., who died in 1875. Edward was the son of the defendant Henry S. The two fathers, Charles P. and Henry S., were brothers, and they advanced to their sons, from time to time, in the shape of loans to the firm, the capital necessary for the transaction of the firm’s business. Pringle’s dealings with the firm began in October, 1867, when he received a letter in which his account with Charles P. Leverich and his account with the firm, condensed into one, was transmitted to him, and he was informed that “your account hereafter will be kept by us exclusively.” The body of this letter was in the handwriting of Henry S., but the signature “Leverich & Co.” was in the handwriting of Edward, which was then known to Pringle. At that time Pringle had no business with Henry S., except that as Charles P. was always very busy as president of the Bank of Hew York, Henry S., who had a desk in the office of Leverich & Co., attended to his business with Pringle for him. From that time Pringle made his consignments to the firm of Leverich & Co. He came to Hew York about twice a year and then visited the office of Leverich & Co., and there usually found Henry S., with whom he then conversed about his account with Charles P., or about his wife’s account, or about his business with the firm of Leverich & Co., as occasion prompted. As to the business with the firm, Pringle sometimes talked with the other defendants. But though this intercourse was thus kept up until the failure of the firm in February, 1878, Pringle failed to show that a single remark was ever addressed to him by Henry S., or any of the members of the firm, or anybody else having an *93 tliorifcy from either of them for that purpose, which was calculated to induce in him a belief that Henry S. was a member of the firm. Having himself had transactions with Henry S., which concerned neither Henry S. personally nor the firm, Pringle had no right to be misled, though he does not even say he was, by the mere presence of Henry S. on the premises of the firm, and the fact that he then and there had conversations with him concerning the business of the firm. True, Henry S. was there looking after his loans. But, so far as Pringle was concerned, he might have been employed as general manager. As the case stands, he might have been anything but a partner. What the plaintiff was bound to prove was, that Henry S. was held out to John J. Pringle as a partner, and that the latter on the faith thereof gave credit to the firm. The evidence fails to come up to this point. There was no such relation of trust or confidence between Henry S. and Pringle as imposed the obligation upon Henry S. to give full information of the composition of the firm to Pringle, and the latter could not omit all inquiry and examination and proceed blindly, and then complain that the former did not volunteer to communicate the knowledge he had. The authorities cited by the learned counsel for the appellant upon the question of holding out, are not in conflict with these views. They all agree that, while it is wholly immaterial whether the person holding himself out as a partner does or does not share the profits and losses, and while no particular mode of holding out is requisite, the person sought to be charged must at least be shown to have done something which, under the circumstances, he had no right to do, and which was calculated to and did create a belief that he was a partner, and that the plaintiff was actually misled thereby. All these elements must concur to create an estoppel by conduct, and especially when the particular holding out complained of *94 rests on negligence merely. It is only where one held forth to the world as a partner, is so held out by his direct authority or connivance, as in Poillon v. Secor (61 N. Y. 456), in which case the defendant for a valuable consideration had expressly authorized the use of his name, that the rule is that he is so held out to every creditor or customer. In Conklin v. Barton (43 Barb. 435), upon which the appellant strongly relies, the liability arose upon certain declarations by the party sought to be charged, upon which credit was given, and which, in connection with certain appearances created by the defendant, were calculated to create the impression that he was a partner.
In the case at bar, Henry S. Leverich was shown to have done nothing but what, as against John J. Pringle, he had a right to do, and Pringle, on the other hand, did not directly claim that he was misled. From his two letters, written March 23, 1878, and his subsequent affidavit, made in the course of the bankruptcy proceedings, on which he proved the claim in suit here, against Edward and Stephen D. Leverich, the then members of the firm, it would even appear that Pringle never believed Henry S. to have been a partner. The plaintiff, therefore, failed to make out a case, and his request to be allowed to go to the jury was properly denied.
The copy of the letter offered was properly rejected. No sufficient foundation had been laid for its admission. It contained no declaration by Henry S. or of any person authorized to speak for him. Nor was it shown to have ever been brought to his attention (Hoppock v. Moses, 43 How. 201).
The judgment should be affirmed with costs.
Russell, J., concurred.