## LUDOWIEG v. TALCOTT.

### (Supreme Court, Appellate Term. April 24, 1905.)

1. PARTNERSHIP—EXISTENCE OF RELATION.

Defendant agreed with a partnership to act as selling agent of all the goods owned and to be owned by the firm. The goods were to be consigned by the firm to defendant and sales by him were to be invoiced to purchasers in defendant's name. Defendant was to have charge of the books, supervise the credits, procure insurance in his name, and to have control of all goods, accounts, and bills receivable. Defendant was to advance a percentage of the value of the consigned goods in his possession and of the outstanding accounts for sales. A sign was placed at the entrance of the firm's place of business, bearing the name of defendant and that of the firm as follows: "James Talcott, Annex. Worthington, Smith & Company, Department." Defendant was to receive a certain commission for his services. *Held*, that defendant was not a partner in the firm.

2. SAME—EVIDENCE.

In an action against defendant for goods sold to the partnership, billheads made out as payable "To James Talcott—Worthington, Smith & Co. Dept.," and containing instructions to make remittances to defendant, which slips had been sometimes used in returning goods to the seller, were not admissible in evidence in the absence of any showing that their use in connection with the returned goods was with defendant's knowledge or consent.

3. SALES—ESTOPPEL.

The fact that the selling agent of a firm held himself out as purchaser of goods purchased by the firm, or was so held out by the firm with his authority, consent, or connivance, did not estop him from denying liability for the goods so purchased, unless the sellers of the goods were actually misled.

Appeal from City Court of New York, Trial Term.

Action by John G. Ludowieg against James Talcott. From a judgment for plaintiff and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before SCOTT, P. J., and LEVENTRITT and GREENBAUM, JJ.

Hughes, Rounds & Schurman (George W. Schurman, of counsel), for appellant.

Jay C. Guggenheimer, for respondent.

SCOTT, P. J. The plaintiff, as assignee of Espen, Stewart & Loeb, Limited, sues to recover the purchase price of goods alleged to have been sold by that house to the defendant. The answer makes a general denial, and, alleging that the plaintiff's assignor was a foreign stock corporation, and the sale was made in this state, pleads that said assignor has not complied with section 15 of the general stock corporation law (Laws 1892, p. 1805, c. 687) by procuring a certificate authorizing it to do business in this state. It will be necessary only to examine the questions raised by the general denial. The agreement for the purchase of the goods was made by a Mr. Lawrencelle, employed by and representing a firm in this city known as Worthington, Smith & Co.,

composed of George B. McLaughlin and William R. Smith, doing
business at No. 7 West Twenty-Second street.  In every instance
the goods were billed by the sellers to Worthington, Smith & Co.
When goods were returned credit bills were sent to that firm.
When Worthington, Smith & Co. went into bankruptcy in 1902,
plaintiff's assignor made up a statement of the account, in which
all the items were charged to Worthington, Smith & Co.  In-
deed, until after this bankruptcy it does not appear that plaintiff's
assignor did any act, or sent out any bill, or made any entry from
which it can be inferred that it understood or believed that it was
selling goods to defendant or extending credit to him.  The defend-
ant's relation to the firm of Worthington, Smith & Co. was de-
fined by a written agreement read in evidence.  It was proved by
defendant, and not disputed, that. no relation or obligation what-
ever existed between him and that firm (except as to a single mat-
ter not relevant to these transactions), save that which was cre-
ated by the written agreement.  By that agreement first executed
by McLaughlin and afterwards adopted by the firm of Worthing-
ton, Smith & Co. defendant was constituted and appointed sole
factor and selling agent for the firm, which agreed to consign to
him for sale upon commission the entire stock of goods then held
and owned by the firm or thereafter manufactured or owned by it,
including all goods thereafter during the continuance of the agree-
ment purchased or manufactured or received for sale.  The goods
were to be consigned by the firm to Talcott, and all sales were
to be made by him and invoiced to purchasers in the name of
"James Talcott. —— Department."  He was to purchase and
own the books of account used in the business, and employ and
pay a bookkeeper, to have supervision of all such books of ac-
count.  He was to supervise the credits, keep books of account at
his main office, furnish the necessary employés for the collection
of accounts, and attend to such collection and the details thereof
at his own expense.  The firm was to pay all other expenses incur-
red in the business.  Insurance was to be taken in defendant's
name, and he was to have the exclusive supervision and control
of the said consigned goods, and to decide all questions as to the
credit to be given to purchasers; and all correspondence, accounts,
remittances, checks, bills receivable, and proceeds of sale, as well
as the goods, were to be in the exclusive possession and con-
trol of defendant as factor.  In return the defendant agreed to
advance to the firm not to exceed 60 per cent. of the net cash
value of consigned goods in his possession, and 75 per cent. of the
net value of outstanding accounts for sales of consigned goods,
after deducting from the gross amount of sales 10 per cent. to
cover discounts, and also any amount previously loaned on the
goods so sold, and his expenses and commissions.  He was to re-
ceive for his services a commission of 4 per cent. upon the net
amount of the sales of consigned goods, and a less commission up-
on goods consigned, but not sold, and returned to the firm.  In-
terest was to be charged and credited in the account current be-

tween the firm and defendant. A sign was to be placed at the entrance to the firm's premises reading "James Talcott, Annex. —— Department." All sales were to be at the risk of the firm, and a veto power was given to defendant as to the persons to be employed in and about the sale of the consigned goods. The lease was to be in the name of or assigned to defendant, and he was to have the actual and exclusive possession and control of the premises and of all goods thereat consigned to him. The sign that was placed at the entrance to the place of business of Worthington, Smith & Co., read as follows: "James Talcott, Annex. Worthington, Smith & Company, Department." It is quite clear that this agreement created no partnership in fact between Worthington, Smith & Co. and the defendant. His relation to the firm was solely that of a selling agent advancing moneys to his principals. The apparently wide powers and control given to him over the goods and their proceeds were only such as were necessary to preserve and insure his lien for moneys advanced upon the goods to be sold. In order to protect himself in this regard, it was essential, or deemed to be so, that he should have legal control of the premises in which the goods were kept; that his name should appear as having some right to such control; that he should hold the insurance; that he should have the ultimate power of determination as to the persons employed to sell the goods, and the persons to whom they were sold on credit. It is observable, however, that he was given no voice as to the character or quantity of goods to be purchased by the firm; that he was not to share in the profits as such, or to bear any of the losses. It appeared that forms of billheads or invoices were prepared and printed for use in connection with the sale of the consigned goods. These billheads were made out as payable "To James Talcott—Worthington, Smith & Co. Dept.," and instructions were printed on them to make remittances in checks payable to the order of James Talcott. There were also what were known as "memorandum slips," intended to accompany goods sent to prospective purchasers for approval and acceptance. These were also made out in the name of "James Talcott—Worthington, Smith & Co. Dept." Since Talcott was so entitled under his agreement, and for the purpose of preserving his lien, it was proper that the bill and memorandum slips should show that payment for goods sold were to be made to him. It happened in a number of cases, however, that the firm of Worthington, Smith & Co. had occasion to return goods to plaintiff's assignor, and in doing so used these memorandum slips. It does not appear that these slips were provided for any such purpose, and, indeed, they were inappropriate therefor; and it is shown that neither the defendant nor any agent of his knew that such use was made of them, or authorized such use, for we can find no principle upon which Worthington, Smith & Co. can be considered as defendant's agents so far as relates to the purchase of goods. As has been pointed out, defendant's relation to that firm under their agreement was simply that of factor or sell-

ing agent. With the purchasers he had nothing to do. Memorandum slips and billheads he provided or permitted to be used for the purpose of selling goods, and they were appropriately framed for that purpose. It may be that in selling and billing goods upon which defendant had a lien Worthington, Smith & Co. acted as his agent with his knowledge and consent, and that they were authorized to use these slips and billheads in connection with sales. But defendant had nothing to do with purchases by Worthington, Smith & Co. The billheads were not adapted for the return to the seller of goods not purchased, and were not intended to be used for such purpose. We are of opinion that it was error to permit these memorandum slips to be introduced in evidence until it had been made to appear—as it was not—that they had been used in connection with returned goods with defendant's consent or knowledge. It was thus conclusively shown that defendant was not in fact a partner in the firm of Worthington, Smith & Co. So much seems to have been conceded on the trial, and it does not appear to have been contended that he could in any aspect of the case be held liable as a partner. We think that it may also be said to have been shown that he was not in fact the purchaser of the goods sold by plaintiff's assignor. There is no evidence that he was the principal debtor, and the documentary and other evidence shows that he was merely the factor for the purchasers, making advances upon their goods after they were purchased, and having only so much control over these goods as was necessary to preserve his factor's lien. The precise ground upon which it was sought to hold defendant, as stated by plaintiff's counsel, was that he "held himself out to be the business in this particular case, and the owner." By this we understand the contention to be that defendant had done or suffered to be done certain acts which indicated that he was the real person doing business under the name of Worthington, Smith & Co. Of this there were really but two items of evidence. The first consisted of the memorandum slips sent to plaintiff's assignor with returned goods. Of these we have already spoken. The second item consisted of the sign upon the door already quoted. We cannot say, as a matter of law, that the peculiar wording of this sign was calculated to lead an observer to believe that the business it advertised was conducted by defendant. Assuming that it presented a question of fact, properly left to the jury, as to what impression it was calculated to convey, we come to the crucial question involved in this appeal. If the defendant can be held liable upon the ground stated by plaintiff's counsel, it must be because he is to be held estopped, so far as concerns plaintiff's assignor, to deny that he was the real party conducting the business carried on under the name of Worthington, Smith & Co. The significant fact in this connection is that it was not claimed upon the trial, and there is not a particle of evidence to show that plaintiff's assignor in selling goods to Worthington, Smith & Co. and extending credit therefor relied upon any belief or any representation made by

any one in any form that defendant was the real purchaser, or was the owner of the business conducted by and under the name of Worthington, Smith & Co. The plaintiff contended and the court held that, if defendant held himself out as principal debtor, or if he was so held out by Worthington, Smith & Co., with his authority, consent, or connivance he was liable for the amount of the sales by plaintiff's assignor, even although it did not appear that the sellers were actually misled thereby into selling the goods and extending the credit. We are unable to accede to this rule of law. It finds its sole support in this state in a proposition laid down by Mr. Parsons in an early edition of his work on Partnership, adopted by Commissioner Dwight in Poillon v. Secor, 61 N. Y. 456, and, so far as we have been able to ascertain, finds no support whatever in any other jurisdiction. Mr. Parsons himself in a later edition of his work withdrew this proposition, and enunciated a directly opposite rule (Parsons on Partnership [4th Ed.] p. 104), and expressly states that Poillon v. Secor, and Young v. Axtel, 2 H. Bl. 242, also cited by Commissioner Dwight, cannot be considered as correctly stating the law. Upon the facts Poillon v. Secor bore no resemblance to the present case, and presented rather a case of agency, than of estoppel. Evart on Estoppel, p. 514. It is said by the learned justice below, in his opinion denying a new trial, that Poillon v. Secor has never been expressly overruled in this state. This may be so, but it certainly has never been followed in the particular in which it is deemed to be applicable to the present case. On the other hand, the whole current of decisions and the settled rule of law is that one cannot be held as principal or partner by estoppel, when in fact he is neither, unless it be made to appear that the person seeking to so hold him knew of the acts or representations, and relied upon them to his detriment. Elmira Rolling-Mill Co. v. Harris, 124 N. Y. 280, 26 N. E. 541; Whitney v. Wardell, 78 Hun, 609, 28 N. Y. Supp. 1118; Taylor v. Meyer, 47 App. Div. 455, 62 N. Y. Supp. 301. It is only upon the doctrine of estoppel that defendant is to be held, if he can be held at all, for he was in fact not a principal, and the case as made wholly fails to establish one of the essential elements of estoppel—reliance upon the representations alleged to have been made.

The other exceptions urged by appellant it is not necessary to examine. The case was tried and submitted to the jury upon what we must consider an erroneous theory of the law, and for that reason the judgment and order must be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.