JOHN T. HANNAH, Appellant, v. NEWTON A. BAYLOR, Respondent.

Kansas City Court of Appeals, October 24, 1887.

1. PRACTICE—STIPULATION BY ATTORNEY—CONSTRUCTION AS TO ITS SCOPE—CASE ADJUDGED.—In a suit, upon sixteen different accounts, all of which, except one, had been assigned to plaintiff, a stipulation was made by the attorney of defendant as to two of them, of the tenor and effect following : "In the Macon circuit court : *John T. Hannah v. N. A. Baylor :* For the purpose of the trial in the above cause, defendant admits that the accounts of B. F. Heiny & Company and Heiny & Hooper are correct, and stand proven. N. A. Baylor, by P. F. Greenwood, Attorney. Sept. 10th, 1885." *Held,* to be an admission, as to these accounts, that the items therein were sold and delivered, and that the prices charged for them were agreed on, or were reasonable, and were unpaid ; leaving open the issue as to the liability of defendant for their payment, and that they stood "proved" against Spotts only, the only party who, upon the face of the accounts, was the debtor. (PHILIPS, P. J., dissents in a separate opinion).

2. ——— INSTRUCTIONS—MUST CONTAIN ALL PROPER QUALIFICATIONS —DISTINCTION BETWEEN GENERAL AND SPECIAL.—Although each instruction must be correct in itself, so far as it goes, and must contain all necessary qualifications which may limit or avoid a liability ; and all must be consistent with each other, and the whole, taken together, must present but one doctrine ; yet, where one instruction is general and refers to the whole case ; and another is special and refers to a particular count in the petition, standing upon exceptional grounds, any omission of a qualification contained in the general instruction from the special is fully supplied ; and it is not objectionable as failing to state all the issues.

3. PARTNERSHIP—LIABILITY OF ONE HOLDING HIMSELF OUT AS PARTNER—RULE CONCERNING.—While the rule of law is, that one who holds himself out as partner is liable as such, it can be applied only when two elements concur : (1) Where the holding out was by the party himself, or with his consent, and (2) when the party invoking the rule had knowledge of such holding out at the time the transaction was had, and was induced to make it on the faith of it.

APPEAL from Macon Circuit Court, HON. ANDREW ELLISON, Judge.

*Affirmed.*

Statement of case by the court.

This cause originated in the circuit court of Adair county, and its venue was changed to Macon county. The action was on sixteen different accounts, and the petition contained as many counts. One of the accounts accrued in favor of the plaintiff. The others were duly assigned to him. All the accounts accrued for goods sold and delivered at the Parcels House, a hotel at Kirksville. The several counts were in the usual form for goods sold and delivered to defendant. The answer was a general denial. The goods sued for were bought and delivered to Temple & Spotts, and to E. L. Spotts, who were successively engaged in managing the said hotel. On the trial the defendant's liability was sought to be established by proof that he was a partner of the parties named in the management of said hotel, and also that said parties were the defendant's agents in said business, he being, in fact, the real proprietor of the hotel. As to the account sued on in the third count of the petition which accrued in favor of John Davis, it was further sought to hold the defendant on the theory that the goods therein sued for were delivered to Spotts at the defendant's request and upon his promise that he would pay for them. The plaintiff offered evidence to establish these contentions, and also proof tending to show that the defendant held himself out as a partner in the said hotel business. The defendant introduced evidence negativing the theories advanced by the plaintiff. After the other accounts sued on had been severally shown to be correct, the plaintiff read the following instrument as applicable to two of the said accounts :

" John T. Hannah v. N. A Baylor. In the Macon Circuit Court.

" For the purpose of the trial in the above case, defendant admits that the accounts of B. F. Heiny &

Company, and Heiny and Cooper are correct and stand proven.                    N. A. BAYLOR,
    " Sept. 10th, 1885.    By P. F. GREENWOOD, Atty."

At the request of the plaintiff, the court instructed the jury that the effect of this agreement was that the defendant admitted the accounts referred to in it and that the verdict should be for the plaintiff on the counts which were based on them for their respective amounts.    When the argument was about to proceed, the court, at the request of the defendant, and over the objection of the plaintiff, permitted Greenwood to testify that in signing the admission above set out, he " only intended to admit the correctness of the items," and that he "did not intend to admit Baylor's liability therefor.    The understanding was designed merely to save Heiny from coming to Macon to testify to the correctness of the accounts." Thereupon the court withdrew its peremptory instructions to find for the plaintiff as to these accounts ; and in lieu left it to the jury to find whether the intention of Greenwood, in making said admission, was to agree that said accounts "should stand as proved against Baylor," in which event the verdict should be for the plaintiff on such accounts.    The other instructions presented to the jury the questions whether the defendant was a partner in the Parcels House, or whether he was in fact the proprietor, and Temple & Spotts and Spotts his agents, managing the same.    Complaint is made that the instructions given for the defendant are inconsistent with the one given for the plaintiff with reference to the account for goods sold by Davis at the defendant's own request.    The instruction given for the plaintiff on this issue was as follows :

    " The court instructs the jury that if they believe, from the evidence in the cause, that defendant Baylor told John Davis to furnish meat to the Parcels House, and that he would pay for it, and that Davis, relying on such promise, and on the faith thereof, did furnish meat to the Parcels House, giving the credit solely to Baylor,

then the jury will find for plaintiff, on the third count, the amount they may believe, from the evidence, was furnished in pursuance of said promise, and they will so find for the plaintiff on this count, even though they should further believe that Baylor had no interest in the hotel."

The instruction given for the defendant, which forms the basis of plaintiff's complaint, was as follows:

"5.   Unless the jury believe, from the evidence, that the defendant was a partner, or proprietor (as defined in other instructions), in the hotel business, then there was no sale or delivery of the goods to defendant, as charged in the petition, and the verdict must be for the defendant."

It is also argued that this, and other instructions of similar import, given on behalf of the defendant, excluded the idea that he could be held liable in this case, on the theory that he held himself out as a partner. The accounts sued on appear to have all been made out against Temple & Spotts, or against E. L. Spotts, except the account of Meyer & Kespohl, which was made out against N. A. Baylor.

The testimony offered by plaintiff, with reference to this account, showed that the goods named in it were sold by Meyer & Kespehl, under a contract with Spotts, with whom it was agreed that the goods should be shipped to Baylor, and that they were, in fact, so shipped; that, upon their arrival at Kirksville, they were receipted for by Baylor's drayman, and taken to the Parcels House, with his consent, but that he denied any connection with the goods, and that they were used by Spotts. There was, however, no proof that Baylor was a party to, or had knowledge of, the agreement under which the goods were shipped. This evidence is made the basis of complaint of the following instruction, given by the court at the defendant's request:

"1.   The court instructs the jury that all claims and

demands sued for in this action are *prima facie* the debts of either Temple and Spotts or Spotts alone, and before the jury can find for the plaintiff, they must believe, from the evidence, that Baylor was, in fact, engaged in the hotel business, either secretly or openly, as charged in plaintiff's petition."

The verdict was for the defendant, and, after an unsuccessful motion for a new trial, the plaintiff appealed to this court.

H. F. MILLAN, F. M. HARRINGTON, and JOHN F. WILLIAMS, for the appellant.

I. The evidence tended to prove that defendant, Baylor, held himself out to the plaintiff and the other creditors as a partner. The fourth instruction, on the part of defendant, was as follows : " Defendant, Baylor, cannot be made a partner in the said hotel business, nor rendered liable to plaintiff's action against his (Baylor's) will, by accident, or the conduct, understandings, beliefs, or opinions of Temple & Spotts, or of the plaintiff and his assignors in this action, or of other parties ; and before the jury can find for the plaintiff, they must believe, from the evidence, that the defendant actually agreed with Temple & Spotts, or with Spotts, to form, and did in fact form, with them or him a partnership, either open or silent, in said hotel business, or that Spotts was the agent of Baylor in conducting the hotel for him." The law is, that, in order to hold defendant as a partner, it is not necessary to show that there was a partnership, but it is sufficient to show that he held himself out as such. *Gates v. Watson,* 54 Mo. 585 ; *Young v. Smith,* 25 Mo. 341 ; *Rippey v. Evans,* 22 Mo. 157.

II. The court erred in permitting plaintiff to prove by Greenwood what was his understanding of the written agreement, and in withdrawing from the jury instructions numbered three and four, on the part of plaintiff. Where the agreement is plain and unambiguous, the intention of the parties must be gathered from

the instrument alone; and oral evidence is not admissible. *Koehring v. Muemminghoff*, 61 Mo. 493 ; *Murdock v. Ganahl*, 47 Mo. 135 ; *Bunce, Adm'r, v. Beck*, 43 Mo. 266. In such case, it is the duty of the court to declare its meaning, as a matter of law, and the court cannot shift this duty on the jury, by instructions. *State ex rel. v. La Faivre*, 53 Mo. 470 ; Thomp. Charge to Jury, 9, 10.

III. The third count of the petition was on the account of John Davis, for meat sold and delivered, and used in the Parcels House. There was evidence tending to prove that Baylor had agreed with Davis that if he would furnish said meat to said hotel, he would pay for same, and that this agreement was made before the meat was furnished, and that after the bill had run to two hundred dollars, Baylor told Davis he would not stand responsible any longer. While defendant, in his evidence, denies that he told Davis he had to look to Spotts for his pay, and that he told Davis he would stand good no longer, he does not deny ordering the meat, and yet the court, in defendant's fifth instruction, declared, "unless the jury believe, from the evidence, that defendant was a partner, or proprietor (as defined in other instructions), in the hotel business, then there was no sale or delivery of the goods to defendant, as charged in the petition, and the verdict must be for the defendant," which was saying to the jury that defendant could not buy meat, unless he was in the hotel business, and unless he was in that business, they must find against the Davis account, notwithstanding Baylor ordered the meat, and agreed to pay for it.

IV. The first instruction, on the part of defendant, told the jury that all the accounts sued on are *prima facie* the debts of either Temple & Spotts, or Spotts alone. This part of said instruction is clearly erroneous. In the first place, the account of Meyer & Kespohl, sued for in the fourteenth count of the petition, was made out against Baylor. Again, the use of the words, *prima*

*facie*, in the first instruction, was clearly erroneous, and was calculated to mislead the jury. Thomp. Charge to Jury, p. 99, sect. 70; *Clark v. Kitchen*, 52 Mo. 316. [This decision seems to have been criticised in *Wright v. Butler* (64 Mo. 164), but there the word was an English word. In this it is a Latin term, and purely technical].

JOHN W. HENRY and B. R. DYSART, for the respondent.

I. The first contention of the plaintiff is, that, inasmuch as there was evidence tending to prove that Baylor held himself out as a co-partner of Spotts & Temple, the court erred in giving instruction number four, to the effect that Baylor could not be held liable as a partner, unless the jury should find, from the evidence, that he actually agreed with Temple & Spotts, or one of them, to, and did, in fact, form with them, or one of them, a co-partnership. On the evidence in this case, it was not error so to instruct the jury. One does not become liable as a co-partner of another, by simply holding himself out as such, but the party seeking to charge him as a partner must show that, believing him to be such, he gave credit to the firm. 1 Story on Partnership [6 Ed.] sect. 64. There is nothing in the cases cited by appellant's counsel, from the Missouri Reports, to the contrary ; and, in *Rippey v. Evans* (22 Mo. 157), it is a part of the statement that such proof was made. *Rimel v. Hayes*, 83 Mo. 201. There was no evidence tending to prove that any of the creditors of the firm gave it credit, because they believed that Baylor was a member of the firm.

II. But conceding, for the argument, that it was sufficient to fix a liability upon him to prove that Baylor held himself out as a partner ; yet the cause was submitted to the jury on the theory that Baylor was only liable as an actual partner. The plaintiff's instruction submitted that question to the jury, and he asked none on any other theory ; and it has so often been held, not

only in the Supreme Court, but by this court, that a party cannot try a cause upon one theory in the circuit court, and shift his ground in the appellate court, that we do not deem it necessary to cite authorities on the subject.

III.  Appellant insists that the court erred in permitting defendant to prove, by Greenwood, what was the meaning of the agreement signed by him as attorney for Baylor, admitting the correctness of accounts of B. F. Heiny & Company, and Heiny & Hooper, and thereupon withdrawing from the jury instructions numbered three and four, given for plaintiff.  The court erred in giving those instructions in the first instance, because the manifest meaning and intent of that agreement was only to relieve plaintiff from proving the items of the accounts named.  By no fair construction of that agreement, in the light of the circumstances, did defendant intend by it to admit his liability to Heiny & Company, or Heiny & Hooper, and, without Greenwood's testimony, the court would have been warranted in withdrawing those instructions from the jury.

IV.  There is absolutely nothing in the last points made by the appellant's counsel.  The court, in instruction numbered eleven, given at plaintiff's instance, told the jury, as to the John Davis account, to find for plaintiff, if they should be satisfied, from the evidence, that Baylor told Davis to furnish meat to the Parcels House, and he would pay for it, if, on the faith of that promise, he did furnish meat to the Parcels House, giving credit solely to Baylor.

DYSART & MITCHELL, also for the respondent.

I.  The fourth instruction of respondent, complained of by appellant, is the exact counterpart of the first, fifth, and eighth, given for appellant.  The appellant asked no instructions on the theory that defendant held himself out as a partner, when in fact he was not such, and thereby obtained credit for Spotts, or for Spotts

& Temple. On the contrary, he goes to the jury on the theory that defendant was either a secret owner or silent partner. To have taken the position that defendant was not a partner, but pretended to be, and, therefore, ought to be held and chargeable as a partner, would have antagonized the position taken, that defendant was a secret owner or silent partner. At the instance of the plaintiff, the jury are instructed to find for him, if the partnership existed, or an ownership was proved, "notwithstanding they might believe, from the evidence, that the partnership was secret, or unknown to the creditor or creditors," and, "although the jury may believe, from the evidence, that, at the time the debts were incurred, credit was alone given to Spotts, or Temple & Spotts, and charged to them." A sane man would hardly be expected at the same time to be proclaiming and concealing his interest in a mercantile concern. The plaintiff chose his own battle ground, and in the light of the instructions asked by him, it would have been gross error to have refused defendant's fourth instruction. 5 Wait's Actions and Defences, p. 105, sect. 2, and cases cited ; *Freeman v. Bloomfield*, 43 Mo. 391. In the latter case, our Supreme Court says: "Partnership is a matter of contract. A man cannot be made a partner against his will, by accident, or the conduct of others. He must agree to be a partner, or, as to outsiders, hold himself out as a partner to those who have trusted him as such." See, also, *Rimel v. Hays* (83 Mo. 221), where the doctrine is enforced and illustrated, that a recovery can only be had against one holding himself out as a partner, on the ground of estoppel. "Estoppel by conduct acted on by another," before the contract was entered into. It was impossible for plaintiff to recover in this case on the ground that defendant held himself out as a partner, as there is no evidence tending to show that these creditors were misled by the conduct of the defendant, or induced to give the credit on his account. At the time they gave the credit, it does not appear that

they knew anything about the defendant, Baylor. There is no intimation that they gave the credit because they knew, or believed, that defendant was connected with the hotel business. No evidence was proper, that the defendant held himself out as a partner, unless it further appear that these claimants knew of it and acted upon it, at the time they furnished the goods. *Walker v. Brown* (S. C. Texas) 1 S. W. Rep.

II. There was no error in the action of the circuit court that plaintiff can complain of in withdrawing instructions three and four, in permitting Greenwood to testify, and in giving the instruction on its own motion in lieu of those withdrawn. Those instructions (three and four) were clearly erroneous. In the light of the surroundings, that agreement only admitted the items of the two accounts mentioned, and dispensed with formal proof, and the court should have so instructed, if, indeed, any instructions thereon were necessary. The court regarded it as involving a latent ambiguity. This was the most favorable view for the plaintiff that the court could take of it. For if, without explanation, the agreement does not admit defendant's liability (as respondent contends), then Greenwood's evidence is harmless, it being the same as the writing. And if the writing does contain a latent ambiguity, it was proper to allow oral evidence to explain it, and show to what phase of the trial the agreement related. And when opened for explanation to defendant, it was also opened for plaintiff. But plaintiff chose to remain silent. While we hold that the agreement does not admit defendant's liability, but simply the items of the accounts, still we can safely rest the case upon the assumption of the circuit court that there was such a latent ambiguity as to warrant parol evidence. 1 Greenl. Evid. [Redf. Ed.] p. 342, sects. 297 to 300 inclusive. The claim of appellant that the writing purports, as a matter of law, *ex vi termini*, an admission of defendant's liability is certainly untenable. Nor was it error for the court to

give the instruction in lieu of the third and fourth withdrawn. 1 Greenl. Evid. [Redf. Ed.] p. 327, sect. 288*b*; *Smith v. Thompson*, 18 Cent. Law Jour. 314; *Doe v. Bevis*, 18 Cent. Law Jour. 628.

III. The plaintiff's eleventh instruction places the Davis account upon the right footing. As to that count, the question of a partnership is not involved, and the court so instructed.

IV. The plaintiff lastly objects that the instructions were not applicable to the Meyer & Kespohl account, because that account was made out against Baylor. Both plaintiff's and defendant's instructions treated a recovery upon that account, as depending upon a partnership or ownership, and rightly so. The goods were ordered by Spotts, to be shipped in the name of Baylor. Not a word that Baylor knew anything about it, until they arrived at Kirksville, and then he refused to receive them, and they were taken to the hotel.

V. The evidence is not preserved in full by the bill of exceptions, and all the issues submitted to the jury by the instructions were decided in favor of defendant.

VI. On the right of Greenwood to testify, we cite, *Hase v. McQuade* (52 Mo. 388); *Fire Insurance Co. v. Seminary* (52 Mo. 480); *Edwards v. Smith* (63 Mo. 119); *Amonett v. Montague* (63 Mo. 201–205); *Philibert v. Burch* (4 Mo. App. 470); *King v. Fink* (51 Mo. 209).

KRAUTHOFF, SPECIAL JUDGE.—I. It is fairly inferable, from the record in this case, that the written admission made by the defendant's attorney with reference to the accounts of B. F. Heiny & Company and Heiny & Hooper was acted on by the plaintiff, and hence it belongs to that class of agreements entered into in the course of judicial proceedings which are styled contractual, and, of consequence, its binding force could not be impaired by an attempt to withdraw the admis-

sion so made on the part of the defendant during the trial. 2 Whart. on Evid., sect. 1184; *Franklin v. National Insurance Co.*, 33 Mo. 491. The parol evidence offered by the defendant not being competent for this purpose, in looking at the language of the instrument, we discover no such ambiguity in its terms as justified a resort to parol proof to show the intention of the parties to it. The instrument speaks for itself, and the action of the trial court in admitting parol proof to control or explain its meaning was erroneous. But whether this was error of a nature necessitating a reversal must depend upon the further question of the proper construction of the admission with a view of determining its scope. If the defendant by it admitted everything the plaintiff was bound to prove, to entitle him to recover on the counts to which it applied, the instructions given by the court in the first instance were correct and should not have been withdrawn. If, on the contrary, the admission only amounted to a waiver of formal proof of the correctness of the accounts referred to, leaving the question of the defendant's liability for them to be determined from other facts to be proved, the instruction ultimately given by the court gave the plaintiff the full benefit of the admission. It is necessary, therefore, to construe the instrument. It may be observed, in the outset, that the matter of passing on agreements and concessions made in the preparation or during the trial of causes is one of considerable importance. Where there are many facts which, from the state of the pleadings, are presented as controverted, but which are so controverted only in form and not in fact, the practice of agreeing on or admitting those facts which are merely formally in issue is constantly resorted to. This practice is deserving the encouragement of the courts. It conduces to simplify the issues to be tried, by narrowing the litigation to the precise matters in controversy ; it saves time and expense and avoids delay and surprise. *Lewis*

*v. Sumner*, 13 Met. 269, 272. When such an agreement or admission is presented for judicial construction, it behooves the court to endeavor to effectuate the intention of the parties, as that intention is ascertainable in the light of the surrounding circumstances and by the application of the rules governing the construction of such instruments. On the one hand, every consideration of good faith demands that a party should be held to the full legal scope of an admission voluntarily made by him. If he has negligently stipulated or admitted to his prejudice, not being induced to do so by the fraud or other wrong of his adversary, the court is not warranted, for that reason, to disregard the act. On the other hand, the court should be careful not to "stick in the bark" and strain the language of an admission so as to lead to a construction which bears the impress of improbability or unreasonableness. The language would be unmistakably clear to require such a result. Applying these rules here, how stands the case? Suit had been brought on sixteen different accounts which had accrued in favor of as many different parties, ranging from $15.08 to $249.99 in amount. Except as to the additional and special aspect worn by one of them, the issues of fact were substantially the same. The defendant was sought to be held liable for all of them upon the same general grounds of partnership and agency. He denied his liability for any of them. His answer was a general denial. Under the case thus presented, the plaintiff, to entitle himself to recover, was put to proof of three facts on each of the counts of the petition : (1) that the items of the account therein sued on were sold and delivered, and that the prices charged for them were agreed on, or were reasonable ; (2) that the account was unpaid ; (3) that the defendant was liable for the account, either as purchaser of the goods, or on the theory of partnership, agency, or estoppel, or on other grounds entailing a legal liability therefor. As to the first two matters, all the accounts stood on the same footing, and these facts

were necessary to be proved as to each of them in turn. In the light of experience in actions on accounts, such proof may well be regarded as formal. Nevertheless, the making of this proof is oftentimes attended with much inconvenience and expense. This case had gone to another county by change of venue. The two accounts covered by the admission aggregated $37.33. To send witnesses to prove their correctness involved expense, as well as loss of time, disproportionate to the amount at stake. That it should have been desired to avoid these was natural. In accordance with the general practice, under such circumstances, this desire was met by a stipulation. That the admission thus made covers two of the facts which the plaintiff was under a burden to prove is clear enough. But did it not do more than that? We learn from the record that the vital point in issue was upon the third fact, above stated, as essential to establishing the defendant's liability. It was upon this issue the evidence conflicted, and to it the instructions of the court were directed. If it had been intended to admit this fact, also, is it not reasonable to suppose that it would have been so stated in terms?

No surrounding circumstances are brought to our attention which place these two accounts in a different light from that in which the others sued on stand. In the absence of such difference, and of specific language clearly disclosing an intention to admit any fact beyond those which were merely matters of formal proof, we cannot hold that the general terms which were employed require a construction of the admission giving it the broad scope claimed for it. It is insisted that the words, "stand proved," necessarily carry with them the idea that every fact essential to a recovery by the plaintiff was intended to be admitted. The meaning of these words, as applied to the subject-matter of the admission, does not warrant this implication. The admission does not extend to the *cause of action* stated in certain counts of the petition, but refers in terms to "the

*accounts* of B. F. Heiny & Co., and Heiny & Hooper.''
The only "accounts" in favor of these parties, involved
in this cause, appear to have been made out against
"E. L. Spotts," as the debtor. The only one of the
accounts sued on, which the appellant's abstract states
to have been made out against the defendant, was the
one in favor of Meyer & Kespohl. The accounts in
question being against E. L. Spotts, if shown or admitted
to be ever so "correct," and if they "stand proved"
ever so conclusively, are not thereby made the debts of
the defendant. Proof is still wanting that he is for
some reason responsible for the accounts against Spotts.
The admission does not supply this proof in terms, and
we find no language requiring us to add the lacking ele-
ment by construction. On the contrary, the admission
itself recites that it is made "*for the purpose of the
trial*" of the cause. This clearly indicates that a trial
was, in the contemplation of the parties, yet to be had,
notwithstanding the admission. A trial implies that
some issue still remains to be decided. Our statute de-
fines a trial to be "the judicial examination of the
issues between the parties, whether they be issues of
law or of fact." Rev. Stat., sect. 3599. If the admis-
sion in question is held to be one of the defendant's
liability *in toto*, and of every fact necessary to fix that
liability, in short, to amount to a consent that judgment
may be rendered against him for the amount of the
accounts referred to in it, what becomes of the very
purpose for which the parties themselves have stated
that it was made? Under the construction contended
for, there would be no further occasion for "a trial" as
to those accounts. The purpose for which an act is done
is a very satisfactory test by which to ascertain the in-
tention of the parties. So, applying the "purpose"
here expressed, to the subject-matter of the admission
under consideration, we find a clear intent that there
should be a trial of some remaining issue in the case.
This issue was the vital one as to the defendant's lia-

bility for an account which stood proved against Spotts, the only party who, upon its face, was the debtor. This issue was not concluded or covered by the admission read.

II.   Nor do we think that defendant's fifth instruction justifies the application of the rule announced in *Sullivan v. Railroad* (88 Mo. 169), by the want of its qualification covering or excepting the case made on the Davis account, which was presented to the jury in the eleventh instruction of the plaintiff's series. The defendant's instruction is *general*, and refers to the case and the sixteen accounts in issue as a whole, while the one given with reference to the additional element present as to the Davis account, is *special*.   It singles out the third count of the petition as standing, in the respect referred to, upon an exceptional ground.   By bringing this exceptional ground to the special attention of the jury, any omission of a qualification to the same effect from the defendant's instruction in question was fully supplied.   We do not think the Sullivan case should be extended to such a state of instructions as here presented.   Even if the Sullivan case can be said to apply here, we think the instruction itself contains the very provision which the rule, in that case, would require to be inserted.   The jury are told that the doctrine of the plaintiff's instruction governs the Davis account, and that they should find for the plaintiff as to it, "*even though they should further believe that Baylor had no interest in the hotel.*"   The other instructions indicate that the phrase, "interest in the hotel," was used in this case as conveying the meaning that the defendant was either a partner in the business of managing said hotel, or was himself the proprietor, acting in the matter through Spotts as his agent.

III.   There was no evidence upon which plaintiff was entitled to recover under the rule that one who holds himself out as a partner is liable as such.   That rule can be applied only when two elements concur: first,

where the holding out was by the party himself, or with his consent; and, second, where the party invoking the rule, had knowledge of such holding out at the time the goods sued for were sold, and was induced to make such sale on the faith of the same. The liability of the party sought to be charged in such a case depends upon the usual principles governing and establishing an estoppel by conduct. *Rimel v. Hays*, 83 Mo. 200, 208, and cas. cit.; 1 Smith's Lead. Cas. [8 Am. Ed.] 1337. There was no proof in this case that the plaintiff, or any one of his assignors, knew of the alleged holding out when the account in his favor accrued, or was in anywise influenced or misled by the conduct of the defendant in the premises. The extent of the evidence offered was that the defendant held himself out as a partner. One of the creditors stated that he had so held himself out to him. This was insufficient unless supplemented by proof that this holding out was connected with the debt sued on in such a manner, and at such a time, that the defendant was estopped from subsequently denying his liability for it. Besides, the error now complained of by the plaintiff runs through his own instructions. He tried the case on the theory of an actual or true partnership, and not on that of a *quasi* partnership based on estoppel by conduct. He cannot, of course, be permitted to thus shift his ground in this court.

IV.   While it is true, that in form, the account of Meyer & Kespohl was made out against the defendant, yet, in view of the fact that the evidence offered to support that account showed that it was so made out without the knowledge or consent of the defendant, and that he denied any connection with the goods charged for, promptly upon their arrival at Kirksville, the account must be regarded as occupying the same position as the others sued on, and as based on a sale to Spotts, in respect to the rule declared in the first instruction given for the defendant. The use of such terms as *prima facie* and the like in instructions to juries is not to be

commended, and cases might arise in which the employment of such terms could be said to have been misleading. In this case, however, there is no ground for the belief that the plaintiff was in any wise prejudiced, or the jury misled by the use made. The instruction in question was nothing more than a declaration of a well-settled rule, applicable to the issues on trial, that the burden of proving the defendant's liability for the accounts sued on was on the plaintiff.

There being no error materially affecting the merits of the case, the judgment is affirmed. Hall, J., concurs. Philips, P. J., dissents in a separate opinion.

### SEPARATE OPINION.

PHILIPS, P. J.—I non-concur in so much of the foregoing opinion as holds that there was no error in the action of the trial court respecting the stipulation of the defendant concerning the accounts of Heiny & Company, and Heiny & Hooper. It was not only an admission that the accounts were correct as to the items and such formal matters, but it is more, that the accounts *stand proved*. Proved against whom? Unquestionably against Baylor; for it says "in the above cause."

It is too narrow, in my view, to say that the purpose was merely to avoid the expense of the claimants going to Macon City to prove the items of the accounts. It must be borne in mind that the object of assigning the respective accounts to Hannah was to avoid multiplicity of suits by embracing them all in one action. The assignors continued to be the real parties in interest. As was well known by all concerned, the real controversy in this case was as to Baylor's liability on these contracts of purchase and sale. Why, if the object was merely to save costs and trouble in going to court at Macon City, would Heiny *et al.* have stipulated only as to the correctness of the accounts, about which, as the sequel shows, there was really no controversy, and stay at home, leaving the real controversy, as to them,

without their evidence to support it ? How were they to prove Baylor's liability without evidence on that issue ? None other was offered by them except the stipulation, and simply because they understood the stipulation to mean exactly what it said, that not only was the correctness of the account admitted, but that it stood "proved in the cause," which cause was against Baylor. To thus lure them to remain away from court, and after the trial had really ended, so far as the evidence was concerned, to spring such an issue was a snare and a cheat. It is no answer to this to say, that the language, "for the purpose of this trial," implies that there was yet something to be tried between the parties. The meaning and whole import of this language, in my opinion, is, simply, that this admission is for the purpose of the trial to come off herein, and not for any other purpose or occasion ; just as it is often stipulated in respect of what a witness would testify if present, it is said, for the purpose of this trial, it is agreed that the witness, if present, would swear so and so. It implies that the party agreeing to admit it does so in the pending trial, but not for any other purpose.

If any inference is to be drawn from the smallness of these two particular accounts, it would rather be that, as they did not amount to much, to avoid litigating as to these, and to escape the force and effect of any special testimony by the Heinys, the defendant preferred, for the purpose of the trial herein, to recognize their claims as "proved." But what is most conclusive to my mind against the theory of the majority opinion, that the stipulation applies only to the correctness of the items of the account, or, in other words, that the items therein were sold, as of the dates and at the prices named, and the like, is, that this was fully covered by the term, "correct," and that the further language can only apply to the real issue in the case—that they were "proved" against the defendant. This, I think, is the clear import of the stipulation.