102   93
90a   86

HAHLO V. MAYER *et al., Appellants.*

1   **Partnership, Holding out Existence of.** One cannot be
held liable as a member of a partnership on the ground of having
held out the existence of the partnership unless the fact of his
having so held out was known to the person seeking to avail him-
self of it.

2.   ———— : ESTOPPEL.   The liability in such case rests on the doctrine
of estoppel.

*Appeal from St. Louis City Circuit Court.*—HON.
G. W. LUBKE, Judge.

REVERSED AND REMANDED.

*Hugo Muench* and *F. A. Cline* for appellants.

( 1 )   The record does not contain any evidence of
an actual copartnership between the defendants, and the
instructions of the court do not properly submit that
question.   1 Lindley on Partnerships, p. 1 ; *Campbell
v. Dent*, 54 Mo. 325.   Not even participation in profits
and losses would constitute partnership without more.
*Clifton v. Howard*, 89 Mo. 192 ; *Donnell v. Harsche*,
67 Mo. 170.   ( 2 )   There was no such "holding out" of
Fred. Mayer as a partner of A. B. Mayer as would
entitle plaintiff as *bona fide* holder of these accommo-
dation notes to charge defendant, A. B. Mayer, as
maker, and the instructions improperly submit that
question.   1 Bates on Part., secs. 90–98 ; *Thompson v.
Bank*, 111 U. S. 530 ; *Rimel v. Hayes*, 83 Mo. 200 ;
*Wood v. Pennel*, 51 Me. 52.

*Albert Arnstein* for respondent.

( 1 )   Instruction, numbered 3, was proper ; a man
taking a promissory note has a right to rely on the sig-
nature he finds on it.   Daniel on Neg. Inst., sec. 352 ;

*Edmunds v. Bushell*, 1 Q. B. 97; Lindley on Part., sec. 181; *Smith . v. Hill*, 45 Vt. 90. ( 2 ) The instructions given by the court of its own motion properly presented the law to the jury under the facts disclosed in the case. *Smith v. Hill*, 45 Vt. 90; *Edmunds v. Bushell*, L. R. 1 Q. B. 97; *Hinman v. Littell*, 23 Mich. 484; Lindley on Part. 54, 181; Daniel on Neg. Inst., sec. 352; Bates on Part., sec. 90; *Wheeler v. McEldowney*, 60 Ill. 358; Story on Part., secs. 64, 192; *Grieff v. Byrner*, 18 La. Ann. 631; *Mershon v. Hobensack*, 22 N. J. L. 372; *Barrett v. Blackman*, 53 Ga. 98; *Cottrill v. Vanduzen*, 22 Vt. 511-515; *Tams v. Hitner*, 9 Pa. St. 441-8; *Smith v. Smith*, 27 N. H. 244; *Campbell v. Hastings*, 29 Ark. 512; *Young v. Smith*, 25 Mo. 341; *Reppey v. Evans*, 22 Mo. 157; *Campbell v. Hood*, 6 Mo. 211. ( 3 ) The evidence shows that A. B. Mayer held Fred. Mayer out as a partner. There is a class of cases in which the legal presumption is that the plaintiff extended the credit on the faith of the "holding out," although no actual proof of the knowledge of such holding out is brought home to the plaintiff, namely, where the holding out is general and public to the world. This case properly comes under that class. *Campbell v. Dent*, 54 Mo. 333; *Thompson v. Bank*, 111 U. S. 529.

BRACE, J.—This is an action against Abraham B. Mayer and Frederick Mayer as partners under the firm name of A. B. Mayer & Son, on two negotiable promissory notes, one for $1,500, dated September 4, 1884, the other for $1,000, dated September 6, 1884, each payable to J. R. Wallach & Bro. six months after date, and signed, A. B. Mayer & Son. Abraham B. Mayer answered under oath denying the execution of the notes, and the alleged partnership. Frederick answered admitting that he executed the notes, avers that they were executed by him without consideration, for the accommodation of the said J. R. Wallach & Bro., and without the knowledge of his codefendant, the said

Abraham, and denies the alleged partnership between him and the said Abraham.    There was a verdict and judgment for the plaintiff for the amount of the notes, interest, damages and costs, against both defendants, and they appeal.

The evidence tended to prove that the notes were executed by Frederick Mayer without any consideration for the accommodation of the payees, J. R. Wallach & Co., and by them negotiated, and that the plaintiff acquired them for value before maturity, and that they were so executed and negotiated without the knowledge of the said Abraham.    The main question in the case was, were the said defendants at the time the notes were executed partners? and, if not partners in fact, did the said Abraham so hold out the said Frederick as his partner, as that he is estopped from denying that he was a partner in an action upon the negotiable promissory notes executed by the said Frederick in said firm-name, brought by the holder thereof who acquired the same for value, before maturity?

Upon the second proposition the court gave the following instructions (We quote only so much of them as bears upon the proposition):

"2.    The court instructs the jury that if they find from the evidence that, at the time the notes in controversy were executed, and were received by plaintiff, the business of A. B. Mayer was conducted under the name of A. B. Mayer & Son, and that said A. B. Mayer knew such to be the fact and acquiesced therein, then said A. B. Mayer is liable on the notes in suit, even though the jury finds that there was in fact no actual partnership then existing between said A. B. Mayer and his son Frederick.

"3.    The court instructs the jury that the presumption of law is, that a party, to whom a negotiable note is transferred, takes it upon the faith of the persons whose names appear upon it as makers; therefore, if

the jury find from the evidence that A. B. Mayer knew that his son Frederick was using the name of the firm of A. B. Mayer & Son in the business of said A. B. Mayer, and said A. B. Mayer acquiesced therein, then plaintiff had a right to rely on the signature on said notes as being the signature of A. B. Mayer and of his son Frederick, and the jury will find against both defendants, even though they find that the defendant Frederick had no express authority to sign the name of A. B. Mayer & Son to the notes.''

The name that appeared upon the face of the notes sued upon as maker was A. B. Mayer & Son. The plaintiff took the note upon the faith of that firm; he has a right to look for payment of his note to every individual who was a member of that firm at the time the note was executed ; he has the further right to look for payment to every individual who when he acquired the notes was holding himself out to him as a member of that firm, whether he was in fact a member of that firm or not. If the instructions had been confined within these limitations, they would have been unobjectionable, but they go further and declare that the defendant Abraham B. Mayer is liable as a member of the firm of A. B. Mayer & Son, although in point of fact he was not a member of such concern, if at the time of the execution of the notes sued on he was holding himself out to the world as a member of the firm of A. B. Mayer & Son, whether the plaintiff knew of such holding out to the public or not.

While this proposition may be said to have had the sanction of respectable authority ( *Young v. Axtell*, cited in *Waugh v. Carver*, 2 H. Bl. 242 ; *Poillon v. Secor*, 61 N. Y. 456 ; *Smith v. Hill*, 45 Vt. 90 ; *Rizer v. James*, 26 Kan. 221), it has not been able to stand the test of critical judicial inquiry, which has in vain sought for a principle upon which it could stand. The great weight of modern authority is against it. The only conceivable ground upon which one can be charged as a partner,

by one who contracts for him and in his name as a partner without his authority, and when, in fact, he was not a partner, is upon the ground of estoppel. The supreme court of the United States in *Thompson v. First Nat. Bank of Toledo*, 111 U. S. 529, considered this question very fully, and, after a thorough review of the authorities, held that a person not in fact a partner could not be made liable to third persons on the ground of having been held out as a partner, except upon the principle of equitable estoppel, and approved the following summing up of the law on this subject by Mr. Justice LINDLEY in his treatise on the law of partnership: "That no person can be fixed with liability on the ground that he has been held out as a partner unless two things concur, viz.: *First*, the alleged act of holding out must have been done by him, or by his consent, and, *secondly*, it must have been known to the person seeking to avail himself of it. In the absence of the first of these requisites, whatever may have been done cannot be imputed to the person sought to be made liable, and in the absence of the second the person seeking to make him liable has not in any way been misled." Lindley on Partnership [2 Am. Ed.] p. 43.

The court cites many authorities which, on examination, will be found to sustain this position, to which others might be added if it were necessary. The doctrine thus announced has been expressly recognized and approved in this state in the cases of *Rimel v. Hayes*, 83 Mo. 200, and in *Hannah v. Baylor*, 27 Mo. App. 302, while the earlier case of *Dowzelot v. Rawlings*, 58 Mo. 75, may be said to rest on the same principle. It is maintained by all the recent text-writers on the subject. In a work just published reviewing many, and citing nearly all, the leading English and American cases on the subject, it is said liability by holding out " proceeds solely on the ground of estoppel," and "a person being liable as a partner, by holding out on the ground of

estoppel solely, is, therefore, not liable to one who did not know of such holding out at the time of contracting. The holding out must antedate the contract, and the plaintiff's knowledge of, and reliance on, his alleged connection must be proved as of that time, for, otherwise, the plaintiff was not misled." 1 Bates on Partnerships, chap. 5, sec. 90, *et seq.* The same doctrine is asserted by another author whose valuable work has just come to hand ( Parsons' Principles of Partnership, chap. 3, sec. 69 ), the correctness of whose position is recognized by Mr. Bigelow in the last edition of his work on estoppel, fifth edition, page 565, note 1.

He who holds another out to be his partner holds himself out as the partner of such other person. There was evidence tending to prove that, at St. Louis, where the defendant, A. B. Mayer, was engaged in business for some months previous to the execution and negotiation of these notes, he had been holding out to the public that his son Frederick was a partner of his under the firm-name of A. B. Mayer & Son. The notes were negotiated in the city of New York, where the payee, Wallach & Co., for whose accommodation the son executed them, was doing business, and where the plaintiff acquired them. There was no evidence tending to prove that the plaintiff had any knowledge of any act of the defendant, Abraham Mayer, relied upon to show that he was holding out his son as a partner. The facts of the case presented simply a holding out to the public as a partner and the court, as matter of law, declared in the instructions quoted that such holding out to the public was sufficient to render the defendant, Abraham Mayer, liable, although he was not a partner of his son, and the plaintiff may not have known, or had any reason to believe, that he had ever held out his son to be his partner. In this the court committed error for which the case must be reversed, and the cause remanded for new trial. All concur, except BARCLAY, J., who will express his views in a separate opinion.

BARCLAY, J. (*dissenting*).—The rule on which the majority opinion rests does not seem to me to control the case shown here by the facts. It, therefore, does not appear necessary further to remark upon it or to discuss its limitations.

This record discloses that Abraham B. Mayer had been carrying on a mercantile business in St. Louis, in his own name ( "A. B. Mayer"), for many years before the notes in suit were made, in September, 1884. In March of that year a reporter for Bradstreet's mercantile agency, having observed in the city directory that the business name was printed as "A. B. Mayer & Son," called at the firm's office to inquire about the change, and was told by Abraham that the firm-name had been modified as indicated; that he had admitted his son, Frederick, to a partnership "to encourage him," and that the son had not added any money to the concern.

These facts appeared from the testimony of the agency reporter, and, although Mr. Abraham B. Mayer was afterwards on the stand as a witness, he did not deny the interview mentioned, though he did deny that his son was his partner.

It further appeared, without question, that Frederick, the son, had been with his father for many years before, as an employe, taking active part in the business, and that father and son continued to participate in the business after, as before, the alleged admission of the son into the firm.

The accommodation notes in dispute were executed by the son and reached the hands of innocent holders for value ( without notice of any infirmities therein ) by regular indorsements before maturity.

The concern in question was a mercantile trading partnership, and, as such, the partners had authority to issue promissory notes, in the absence of any notice to holders thereof of any limitation of such authority. The business carried on was, admittedly, that of A. B. Mayer, in any view of the facts. He claims that it was

his exclusively, and that his son, though taking part in it as an employe, was not a partner therein. The notes were issued in the name of "A. B. Mayer & Son," which amounted, in my opinion, to a continuing representation to any holder (not better informed) that A. B. Mayer and some son of his composed the firm. It seems to me that if Abraham B. Mayer knew that his son, Frederick, was using the name of A. B. Mayer & Son in the business, and assented to it, he should be held liable for the notes issued in the form indicated, when held by innocent parties, in the circumstances described. Therefore, this dissent from the able opinion which has been delivered by my learned brother, BRACE.'