GAYLORD S. GOODWIN, Respondent, v. D. K. WINSTON, J. E. MANNING and GLENN RICHEY, Defendants, and GLENN RICHEY, Appellant.—230 S. W. (2) 793.

Springfield Court of Appeals.   June 1, 1950.

*Arthur H. Garner* for appellant.

*Burden & Shortridge* for respondent.

VANDEVENTER, P. J.—This is a suit for an insurance premium. The petition alleged that the defendants were partners. The answer of defendant-appellant, Glenn Richey, denied the partnership. It was tried to a jury resulting in a verdict against defendants, Winston and Manning and a verdict in favor of Richey. A motion for judgment, notwithstanding the verdict, and a motion for new trial were filed, and the court granted the motion for new trial "for the reason that verdict is against the weight of the evidence * * *." From the judgment granting the motion for new trial, Richey has appealed.

There is no dispute as to the facts. Plaintiff Goodwin was an insurance agent writing policies for the Bituminous Casualty Corporation. On May 8, 1947, at the request of the Reconstruction Finance Corporation, he wrote the Ollie D. Mining Company a Workmen's Compensation Policy and a Contractor's Public Liability Policy. These policies continued in force until November 1, 1947, when they were cancelled for non-payment of premiums aggregating, less certain credits, $947.44 for the months of September and October, 1947. Goodwin had paid the Bituminous this premium. The policy was based upon the pay roll of the Ollie D. Mining Company and the statement as to this pay roll was made out by defendant Winston and was signed "Ollie D. Mining Company by D. K. Winston." Goodwin did not know defendant Richey at the time of the writing of the policy and had never seen him until the day he was testifying at the trial.

The Ollie D. Mining Company was organized May 1, 1946, was a partnership and the partners were D. K. Winston, J. E. Manning and James C. Manning, (since deceased.) They had borrowed $15,000 from the Reconstruction Finance Corporation, which was later increased to $20,000.00. They were endeavoring to increase the loan to $25,000.00, when they were informed by representatives of the Reconstruction Finance Corporation that no further loans could be made until they employed a competent manager to operate the mine. The present management was inefficient. The three partners suggested defendant Richey as a person competent to operate the mine and his selection was approved by officers of the Reconstruction Finance Corporation.

On the 24th day of October, 1946, D. K. Winston, James Elwood Manning and James C. Manning entered into a contract with Glenn T. Richey. The contract recited that Winston and the two Mannings were partners in operating a mine under the name of Ollie D. Mining Company and that,

"WHEREAS, The said Winston, Manning and Manning, as such partners, are at this time obligated to the Reconstruction Finance Corporation for moneys used in the development of their mining project, the purchase of machinery and equipment and

the payment of wages, the total of such obligation aggregating at this time the sum of $20,000.00;

"AND, WHEREAS, the development of such mining venture has now progressed to a point which makes it desirable that the said partners avail themselves of the expert assistance and advice of the said Glenn T. Richey in the management and further development of said project;

"NOW THEREFORE, It is mutually agreed between the said partners and the said Glenn T. Richey that the partnership heretofore existing be continued and be extended to include the said Richey as a fourth partner in said venture, upon the basis and under the terms and conditions hereinafter set forth, to-wit:
\* \* \*

"2. The said Glenn T. Richey shall act as Superintendent of the Company's mine located West of the town of Duenweg, Missouri, it being expressly understood that this said mine constitutes the sole interest of the Ollie D. Mining Company and this partnership, and shall devote his full time and expend his best efforts and skill in the operation and development of said mine, and in the management and direction thereof. And there shall be paid to the said Richey, as compensation for his services in this regard, the sum of Seventy-five Dollars ($75.00) per week from the gross receipts which shall be derived from the sale of lead and zinc ores, it being the intention of the parties that no liability for the payment of said sum shall attach to any individual partner herein, but that, as between the partners, this sum shall represent salary and be considered and treated as part of the operating expenses. The payment of such salary shall continue until such time as the obligation of the said partnership to the Reconstruction Finance Corporation shall have been paid and fully discharged, at which time the said Richey shall become and be a general partner herein upon the basis and in the proportions as hereinafter more specifically set forth, and payments to him shall then be made and determined in accordance with his interest in said partnership."

The contract then provided that Winston and the two Mannings might be employed to render services and that payment for those services should continue "until such time as the obligations of the partnership to the Reconstruction Finance Corporation shall have been paid and fully discharged, at which time the same named individuals shall become and be general partners herein upon the basis and in the proportion as more specifically hereinafter set forth, and payments to them shall then be made in accordance with their respective individual interest." The contract further provided that the net profits derived from the sale of ores shall be applied to the payment of the obligation to the Reconstruction Finance Corporation, and that in determining the net profit the payment of moneys to the

partners as compensation for services rendered the partnership was to be deducted from gross receipts as part of the expenses of operation.

After the Reconstruction Finance Corporation had been paid, the salaries were to cease. Winston and James Elwood Manning would own 5/16 each of the business, James C. Manning ¼ and defendant Richey ⅛. It was then provided that this partnership should remain and be continued for a term of five years from the date of the contract. But it does not say whether it is referring to the then existing partnership of Winston and the two Mannings or the partnership to be later formed when the Reconstruction Finance Corporation had been paid.

This contract was signed by the three members of the partnership and by Richey. On April 17, 1947, Richey became convinced that the mine could not be operated profitably, so he terminated his managership and his salary was paid to him in full, as provided by the contract. The three partners wanted him to return and continue operating the mine and on June 30, 1947, they wrote, mailed and he received, the following letter:

"By reason of your failure, neglect and refusal to carry out the terms and provisions of the agreement entered into between the undersigned and yourself, under date of the 24th day of October, 1946, said contract has been cancelled and is of no further force or effect, and the partnership to the extent you were included therein under said contract has been dissolved."

This letter was signed by Winston and the two Mannings. Richey made no answer to this letter and they never saw him again until about the 23rd of January, 1948. About that time some powder company was a creditor of the Ollie D. Mining Company, had not been paid for their powder and was intimating to Richey that he was liable for the indebtedness. The three partners and Mr. Richey then entered into a mutual release by which Richey released the three partners from all obligation to him by virtue of the contract of October 24, 1946 and they in turn released Mr. Richey from any obligation to them. In this release there is no assertion or mention of an existing partnership and the contract of October 24, 1946 was made a part of the release by reference.

During the time that Richey was managing the mine, he had complete charge of all its operations except keeping the books and corresponding with the Reconstruction Finance Corporation. Those duties were performed by Mr. Winston. Richey knew that the mine was insured while he was operating it but he was never consulted in relation to it and did not know and had never met the plaintiff. To satisfy the Reconstruction Finance Corporation so the last $5,000 loan could be procured, it was furnished with a copy of the contract of October 24, 1946. The Reconstruction Finance Corporation had

a rule that a partner in a business could not draw more than $200.00 per month as salary. From the time he retired, as manager, April 17, 1947, Richey had no connection with the Ollie D. Mining Company in any manner. He testified that he had never shared in the profits of the mining company, had never invested anything in the enterprise but his labor and has received nothing from them save his salary, that he owned no interest in it, never had and under the contract could not have owned an interest until the Reconstruction Finance Corporation was paid, which at the time of the trial, had concededly not been done.

It is clearly apparent to us from the undisputed facts in this case that Richey was not a partner with Winston and the Mannings. He was to become a partner when his efforts as manager had produced net profits sufficient to liquidate the indebtedness to the Reconstruction Finance Corporation. We must bear in mind that this was a contract between a partnership and Richey. It created the relationship of employer and employee and references in the contract to a partnrship undoubtedly refer to that contracting party. If Richey's efforts as manager were successful and he succeeded in accumulating sufficient net profits to pay the indebtedness, his salary as an employee ceased, he became the owner of $\frac{1}{8}$ of the business and from then on, his profits were the only compensation he was to receive and that was to be in the same ratio as his ownership. Likewise, the salaries of the two members of the partnership were to cease when the indebtedness was paid and the prospective partnership was fully consummated. They then would receive such profits as would be justified by their proportionate share in the whole assets of the partnership.

There is a great difference between a partnership *in praesenti* and one to be formed in the future. This principle is clearly enunciated in 40 Am. Juris., Partnership, Sec. 27, where it is said:

"There is a marked distinction between a partnership actually consummated and an agreement to enter into partnership at a future time. A partnership in fact cannot be predicated on an agreement to enter into a copartnership at a future day unless it is shown that such agreement was actually consummated."

Also in 47 C. J. page 657, et seq. Sec. 48, we find the following statement of the law:

"The mere agreement to form a partnership does not of itself create a partnership, nor does the advancement by one of part of his agreed share of the capital. Persons who have entered into a contract to become partners at some future time or upon the happening of some future contingency do not become partners until or unless the agreed time has arrived or the contingency has happened. And it has been held that a contract, purporting to create a partnership in praesenti to engage in a business at a future time or the happening of a future contingency, does not

in itself create a present partnership, as the courts chiefly regard the intention of the parties rather than the language employed to express their intention. When the time elapses or the contingency happens, the partnership comes into existence. Whether a partnership exists is determined by ascertaining from the terms of the agreement whether any time has to elapse or any act remains to be done before the right to share profits accrues.''

In the recent case of Underberg v. Yates, 194 S. W. (2) 277 (Tex. Civ. App.) in construing a contract similar to the one in question here, the court said:

·''As we construe these allegations, appellee had no present right of ownership or interest in the assets of the business or the profits to be derived therefrom. Appellant called the alleged arrangement relative to the acquisition by appellee of an interest in the business an 'anchor.' The vesting in appellee of title to a one-third interest in the assets and of a right to a share of the profits was contingent upon the prior payment of the debts of the business out of such profits and the continuance of appellee's services for the stipulated weekly compensation. Such a relation does not create an existing partnership, but rather two relations, that of employer and employe, and of parties to an executory contract to form a partnership.''

In Chancellor v. Brachman (Tex. Civ. App.) 41 S. W. (2) 1015, the court used this language:

''The mere agreement to form a partnership does not itself create a partnership, nor does the advancement by one of part of his agreed share of the capital. Persons who have entered into a contract to become partners at some future time or upon the happening of some future contingency do not become partners until or unless the agreed time has arrived or the contingency has happened.''

In Coens v. Marousis 119 A. 549, 275 Pa. 498, the Supreme Court of Pennsylvania, in construing an agreement to form a partnership in the future said:

''Whether a partnership existed must be found from the terms of the agreement. A partnership relation may be created where one gives money or effects and the other labor or skill, under an agreement for a proportionate division of profits and losses * * * but where the agreement contemplates the formation of a partnership at some future time, as in this case, and the entire capital is contributed by one of the parties, the other furnishing his services free until such time as the former is reimbursed from the profits, when the latter is to be given an interest in the business, it is evident no partnership is intended until these events occur. Persons who have entered into a contract to become partners at some future time, or upon the happening of some future contingency, do not become partners until the agreed time has

arrived or the contingency has happened. \* \* \* A mere agreement to form one does not of itself create a partnership, nor does the advancement by one party of his agreed share of the capital. The entire agreement must be considered with all the attending circumstances.''

This case was cited and quoted from with approval in the case of Rowley v. Rowley 294 Pa. 535, 144 A. 537. This same principle was announced in Wamsganz v. Wolff, 86 Mo. App. 205, and in Wachter v. Heman 82 Mo. App. 243.

Respondent cites the case Erhardt et al. v. Stevenson 128 Mo. App. 476, 106 S. W. 1118 as authority for the proposition that Richey was liable for this indebtedness though a partnership did not in fact exist. But the facts in this case are dissimilar to these before us. The court in the Erhardt case held that there was an agreement to form a partnership in the future when one of the partners would furnish a building, another labor and the third would produce $5,000 in cash. He failed to produce it, but in the meantime upon the building owned by one of the partners, considerable materials were furnished and labor done by a third party for the benefit of all the prospective partners. The court held there was no actual existing partnership as between the partners, but said:

''On this evidence, notwithstanding the contract of partnership was, as between the parties thereto, held in abeyance, the parties to the contract were liable for such work as Pullis contracted to have done for the renovation of the house, for the work was not done for Pullis alone, but for the benefit of the three parties to the contract of partnership and by their direction, and with the understanding that it was at the expense of the partnership.''

That case differs from the one before us because there the prospective partners directed the work to be done with the understanding that it was at the expense of the partnership and for the benefit of all three of the parties. We do not think this case is in point under the facts in the case before us. We therefore hold that while there was an agreement to form a partnership in the future, that the partnership came into existence only upon the happening of a contingency to-wit, the production of net profits sufficient to pay the indebtedness to the Reconstruction Finance Corporation. This was never accomplished, as all parties admitted.

Plaintiff does not plead that defendant Richey is estopped to deny the partnership but he is not required to specially plead estoppel in this case. Interstate Coal Company v. Gordon, et al. (Mo. App.) 216 S. W. 783.

The law is that if persons hold themselves out to be partners and deal with third persons, who rely upon that holding out to their detriment, they are liable as though they were partners in fact. But to hold them responsible for obligations so created, the third person must prove that they held themselves out, that he relied upon it and the

obligation was the result of such reliance. 40 Am. Juris., Partnership, Sec. 76. 47 C. J. page 686, Sec. 77. Hahlo v. Mayer et al., 102 Mo. 93. 13 S. W. 804, Darling v. Buddy, 1 S. W. (2) 163, 318 Mo. 784. Drake Hardware Co. v. Bragg et al. (Mo. App.) 219 S. W. 717. Interstate Coal Co. v. Gordon et al., (Mo. App.) 216 S. W. 783. Gamble v. Grether et al. 108 Mo. App. 340, 83 S. W. 306. Apparently the case was not tried on this theory but was tried upon the theory that the contract made Richey a partner and that he was liable to Goodwin although Goodwin knew nothing about him, on the theory that he was a secret partner. A recovery on this theory could be had only if he was a partner in fact. No recovery could be had upon the theory of estoppel because the record contains no evidence that he was held out to Goodwin as a partner and there is no evidence that Goodwin thought he was a partner or relied upon him being a partner or acted to his detriment upon the belief that he was such.

Under these circumstances, under the authorities cited, no recovery could be had by him as against Richey, on the theory that he was estopped to deny the partnership.

Respondent contends that this court has no authority to interfere with the trial court's action in sustaining the motion for new trial where it was done upon the theory that the verdict of the jury was against the weight of the evidence. This might be true if the evidence was conflicting, but here the evidence, as we view it, is all one way and a judgment if rendered for plaintiff, as against Richey, could not be sustained. Graves v. Atchison, Topeka, Santa Fe Railway Co. (Mo.) 227 S. W. (2) 660. Hoefel v. Hammel (Mo. App.) 228 S. W. (2) 402. Kopp v. Traders Gate City Nat'l Bank, (Mo.) 210 S. W. (2) 49. Castorina v. Herrman 340 Mo. 1026, 104 S. W. (2) 297. In the Graves case, first cited, the court said:

"The trial court's sustention of the motion for a new trial on the ground the verdict was against the weight of the evidence was discretionary. However, such discretion should not be exercised in an arbitrary or unreasonable manner; and, in determining whether the trial court properly exercised its discretion in awarding a new trial on such ground, we will examine the record to ascertain if there was sufficient substantial evidence to justify the submission of plaintiff's case to the jury; or to sustain a verdict for plaintiff, the party to whom the new trial was granted."

As we view it, there was no evidence in this record to sustain a verdict for plaintiff against defendant Richey if it had been obtained. Therefore the action of the trial court in granting a new trial upon the weight of the evidence was arbitrary and unreasonable and not the proper exercise of sound judicial discretion.

The order granting the new trial should be reversed and the cause remanded with directions to reinstate the verdict for defendant Richey. It is so ordered. *Blair, J.,* and *McDowell, J.,* concur.