STATE of Missouri, Respondent,

v.

Michael Ray CARTER, Appellant.

No. 63653.

Supreme Court of Missouri,

En Banc.

Aug. 31, 1982.

Rehearing Denied Nov. 23, 1982.

**56**

David Robards, Public Defender, Charles Buchanan, Asst. Public Defender, Joplin, for appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, for respondent.

NORWIN D. HOUSER, Senior Judge.

Michael Ray Carter, convicted of murder in the second degree and sentenced to 30 years' imprisonment, appealed to the Missouri Court of Appeals, Southern District. The appeal was transferred to this Court before opinion for the assigned reason that the issues raised with respect to the interpretation of the Rules of the Supreme Court relating to discovery are matters of first impression in this State and of general interest and importance requiring a conclusive determination by this Court.

The homicide, which occurred in the juvenile dormitory of the Jasper County Jail, was witnessed by several inmates of the jail, jail employees and a probation officer. The State introduced strong and uncontradicted evidence that defendant, a jail inmate, made an unprovoked attack on a fellow inmate, Billy Joe Kralicek, striking him 15 to 25 times with a 30-pound metal mop wringer, and killing him.

Defendant pleaded not guilty by reason of mental disease or defect. § 552.030, RSMo 1969. Prior to trial defendant employed and was examined by two psychiatrists for the purpose of obtaining expert testimony in support of his defense: Dr. Turfboer, who concluded that defendant suffered from a toxic psychosis excluding criminal responsibility, and Dr. Roy Wilson, who, contrary to defendant's expectations, concluded that defendant was not suffering from a mental disease or defect excluding criminal responsibility. Counsel for defendant decided not to call Dr. Wilson as a defense witness. The State moved for a court order to compel defendant to disclose Dr. Wilson's report. Following a contested hearing, the State's motion was sustained and defendant's motion to suppress Dr. Wilson's testimony was overruled. Pursuant to the court order Dr. Wilson disclosed his report to the State. At the trial, following direct testimony pro and con on the question of defendant's mental condition, the State called Dr. Wilson as a witness in rebuttal. He testified over objection that in his opinion defendant was not suffering from a mental disease or defect excluding mental responsibility.

First, defendant contends that the disclosure should not have been ordered and the State should not have been allowed to use Dr. Wilson's testimony in rebuttal because this (1) deprived defendant of the right to remain silent, thereby invading the Fifth Amendment prohibition against compulsory self-incrimination; (2) deprived defendant of due process of law because Dr. Wilson's report constituted the work product of the defense attorney who actually employed Dr. Wilson—that under the work product doctrine material prepared by agents for the defense attorney as well as material prepared by the attorney himself is protected; (3) deprived defendant of his Sixth Amendment right to the effective assistance of counsel, and (4) violated the attorney-client privilege.

 The attorney-client privilege is created by statute. Section 491.060(3), RSMo 1978, makes an attorney incompetent to testify "concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client." The privilege is the client's to claim and runs from the client to the attorney. *Ehrhardt v. Stevenson,* 128 Mo.App. 476, 106 S.W. 1118 (1907). The privilege is limited to communications between the attorney and the client. *State v. Hardin,* 558 S.W.2d 804, 807 (Mo.App.1977). It operates only to render the attorney incompetent to testify to confidential communications made to him by a client. It does not extend to communications between the client and a psychiatrist employed by the client through his attorney in an effort to obtain an opinion in support of his defense of mental disease or defect excluding criminal responsibility. The testimony under challenge is not within the attorney-client privilege. *People v. Sorna,* 88 Mich.App. 351, 276 N.W.2d 892 (1979); *People v. Edney,* 39 N.Y.2d 620, 350 N.E.2d 400, 385 N.Y.S.2d 23 (N.Y.App.1976); *United States ex rel. Edney v. Smith,* 425 F.Supp. 1038 (E.D.N.Y. 1976); Annot. 14 A.L.R. 4th 594 (1982).

 Had the testimony of Dr. Wilson been within the privilege, it still would not have been available to defendant because defendant waived the privilege. By interposing the defense of insanity, defendant effectively waived any right to assert any claim of privilege, including the attorney-client privilege. When defendant filed his notice of intention to rely upon the defense of mental disease or defect excluding criminal responsibility, he thereby opened up the inquiry into his mental condition and entitled the State to move for disclosure of the underlying factual basis of his insanity plea and the result of the examinations by defendant's psychiatrists. It is well settled that when a party once places the question of his mental condition in issue he thereby waives the *physician-patient* privilege to exclude testimony of any doctors who have examined him for that purpose. *State v. Sapp,* 356 Mo. 705, 203 S.W.2d 425, 429 (1947); *State v. Cochran,* 356 Mo. 778, 203 S.W.2d 707, 711 (banc 1947); *State v. Swinburne,* 324 S.W.2d 746, 750–751[4] (Mo. banc 1959); *State v. Speedy,* 543 S.W.2d 251, 256 (Mo.App.1976); *State ex rel. Husgen v. Stussie,* 617 S.W.2d 414, 416[4] (Mo.App. 1981); *State v. Long,* 257 Mo. 199, 165 S.W. 748, 753 (banc 1914); *State v. Lewisohn,* 379 A.2d 1192, 1211 (Me.1977). "Appellant could not be permitted to call as witnesses only those doctors whom he desired to call, and then claim the right to object as to other doctors who treated and examined him for the same condition (citing three Missouri cases)." *State v. Sapp, supra,* 203 S.W.2d at 429.

 By the same token and for the same reasons a defendant who pleads insanity waives all other privileges, including the attorney-client privilege, *People v. Edney, supra,* and the privilege against self-incrimination. *State v. Cochran, supra; State v. Swinburne, supra; State v. Speedy, supra.*

There is another fundamental reason why the privileges sought to be invoked by defendant are not grounds for reversal of this judgment of conviction, namely, the profound impact the promulgation by the Supreme Court of reciprocal rules of discovery has had upon the exclusionary rules of privilege.

Under Rule 25.05(A)(1) a defendant is required to disclose to the State, without court order, results of mental examinations which the defense intends to introduce in evidence at the trial. Under Rule 25.06(A), subject to constitutional limitations, a defendant may be required, by court order on motion, to disclose to the State material and information not covered by Rule 25.05, upon a finding by the court that the State's request is reasonable, and that the material and information sought is relevant and material to the State's case.

If and when a request is made by the State for material and information which would ordinarily be shielded and protected from disclosure by the attorney-client privilege, the rule calls upon the court to determine the reasonableness of the request and the materiality to the State's case of the material and information sought. In making this determination the court must exercise a sound judicial discretion, balancing the respective interests of the State and the defendant in disclosure or nondisclosure.

The prescribed procedure was complied with. The State filed a motion under the rule. The court made the requisite findings and ordered the disclosure. There is nothing to indicate an abuse of discretion on the part of the court. On the contrary, the court appears to have exercised its discretion properly, under the record. Unquestionably the material disclosed and information sought was relevant and material to the State's case. Dr. Wilson's report and testimony bore directly upon the central issue in the case: whether defendant at the time of the homicide was mentally responsible for his acts. It has not been shown or suggested that the ruling was not reasonable. Every consideration supports the reasonableness of the order. Essential fairness would seem to require such a ruling. Let us assume a homicide case where the defense is insanity. The prosecutor causes a psychiatrist to be employed by the State to examine the defendant in the hope of bolstering the State's position that defendant was sane at the time of the homicide. To the surprise and dismay of the prosecutor the doctor reports that his examination discloses, and he concludes, that defendant was insane at the time in question and was mentally irresponsible for his homicidal act. The prosecutor does not intend to call the psychiatrist to testify at the trial. Is there any doubt that defendant could compel disclosure of this evidence and be entitled to use it at the trial? Would it be fair to deprive defendant of the benefit of this evidence on the vital issue? Would it be fair or wise to deprive the trier of the fact of this evidence? Just as the evidence would be available to the defendant in that case, so the evidence is available to the State in this. It is a poor rule that does not work both ways.

Public policy considerations weigh heavily in favor of disclosure under the circumstances of this case. There is no question that defendant committed a brutal homicide under highly incriminating circumstances. The only live and vital question for decision by the jury was whether defendant was mentally responsible for his acts. The fundamental purpose of a criminal trial is the fair ascertainment of the truth. *People v. Sorna,* 276 N.W.2d 892, 895[4] (Mich.App.1979). The jury needed every bit of available evidence touching that issue in order to render an intelligent, fair and just verdict. Not only the defendant, but also the State of Missouri, has a direct interest in an accurate, just and informed verdict based upon all available relevant and material evidence bearing on the question. The trier of the fact must not be "so effectively deprived of valuable witnesses as to undermine the public interest in the administration of justice." *Pouncy v. Florida,* 353 So.2d 640, 642 (Fla.App.1977). In *United States ex rel. Edney v. Smith,* 425 F.Supp. 1038 (E.D.N.Y.1976), *aff'd* 556 F.2d 556 (2d Cir.1977), *cert. denied* 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977), the court at 1046 referred to "The increased potential for inaccuracy in the truth-finding process as the trier of fact is deprived of valuable witnesses," and referred to the salutary concept that "the trier of fact should have adequate access to as much of the available psychiatric testimony as possi-

ble where the defendant's mental state is in issue." *Id.* at 1049.

The physician-patient privilege and the attorney-client privilege are to be used for preserving legitimate confidential communications, not for suppressing the truth after the privileged one lets the bars down.

No constitutional limitation is involved. These privileges have no constitutional underpinning; they are of purely statutory origin. Under the disclosure rules the benefits of the attorney-client privilege, when applicable, may be denied a party under the circumstances of this case.

The work product doctrine does not insulate Dr. Wilson's report and testimony from disclosure and use at trial. Work product consists of "opinions, theories or conclusions of defendant's attorney . . . [and] communications between defendant and his attorney." *State v. Hardin,* 581 S.W.2d 67, 69 (Mo.App.1979); *State v. Roseman,* 583 S.W.2d 232, 235 (Mo.App.1979). The report of Dr. Wilson was not an opinion, theory or conclusion of defendant's counsel or a communication by defendant to his attorney, and therefore was not the work product of the attorney. Hired on a one-time basis to give defendant a psychiatric examination and prepare an objective report on defendant's mental condition, Dr. Wilson acted in the capacity of an independent contractor, not as an agent of defense counsel in any real sense of the word, and not as a member of defense counsel's legal or investigative staff. The fact that defendant's mother paid Dr. Wilson's fee did not create an agent-principal relationship. Dr. Wilson did not assume any fiduciary duty to defendant or his counsel by accepting payment of his fee.

Defendant was not deprived of his constitutional right to effective assistance of counsel by the court's ruling. The fact that counsel in preparing the defense for his client could possibly choose a psychiatrist who might make a report adverse to counsel's theory of defense, or that in a psychiatric examination a defendant might speak guardedly or be less than candid with the doctor, knowing that the doctor might turn out to be a witness against him are not considerations of sufficient importance in this case to outweigh and override the stated requirements of fairness, justice and public policy in determining whether a request by the State for disclosure is reasonable under Rule 25.06(A).

Defendant's second point: "The trial court erred in failing to grant a mistrial when it was repeatedly brought out in evidence before the jury that Dr. Patil who did not testify had examined the defendant and found him not to be suffering from a mental disease or defect excluding responsibility, the central issue in the case, so as to present that opinion to the jury by way of inadmissible hearsay and deprive the defendant of his right of confrontation and cross-examination."

Dr. Patil, an employee of Fulton State Hospital, examined defendant shortly after the homicide and was of the opinion that defendant was not suffering from a mental disease or defect excluding responsibility at the time. Dr. Patil was not called as a witness at the trial.

Dr. Leggett, who conducted a second examination of defendant at Fulton State Hospital, reached the same conclusion. Called by the State as a witness, Dr. Leggett was asked on redirect examination whether his evaluation and conclusion were identical to that of Dr. Patil. Before the witness answered the question defendant objected on the grounds of hearsay and right of confrontation. The objection was sustained and Dr. Leggett did not give an answer.

On cross-examination defendant's witness Dr. Turfboer, asked what information he had on defendant when he examined him, testified that he had the Fulton report (Dr. Patil's report). The prosecutor then asked: "And that report said there was no mental disease or defect?" Defendant objected and out of the hearing of the jury counsel requested a mistrial on the ground that the court had ruled the issue hearsay and that it violated defendant's constitutional right

to confront the witness against him. The court sustained the objection and cautioned counsel for the State not to make any references to or try to bring out the results of a report from a doctor who was not present to testify, but denied the motion for mistrial. The court stated that the jury had not "caught the drift" of what had been said. The prosecutor then elicited from Dr. Turfboer that his opinion was not consistent with either of the reports from Fulton. No immediate objection was made to this inquiry or testimony. The prosecutor later asked Dr. Turfboer whether his opinion was consistent with Dr. Wilson's report. Out of the hearing of the jury defense counsel objected to this question on the ground that it invaded defendant's right to confront Dr. Wilson. The court sustained the objection. Defense counsel then, for the first time, objected to the preceding question (already answered) relating to the first Fulton report, and the court sustained the objection. Defense counsel then requested a mistrial, which request was overruled. The court said to counsel that an earlier objection to the preceding question to Dr. Turfboer whether his opinion was consistent with the reports from Fulton State Hospital would have been sustained had such an objection been made.

Another mistrial motion was made when Dr. Wilson, on direct examination, volunteered without being asked that "Dr. Leggett and Dr. Patil essentially agreed with each other and they essentially agreed with me." Defense counsel objected to the voluntary statement on the basis of hearsay and defendant's right of confrontation and moved for a mistrial. The judge, observing that State's counsel did not elicit the voluntary statement, sustained the objection and offered to instruct the jury to disregard it. The judge stated additionally that he did not regard it as serious—that he "did not think it really impressed the jury enough to make a mistrial necessary at this stage," and admonished the prosecutor by saying, "The idea, Mr. McFarlane, is to keep away from this."

The trial court did not err in denying the several requests for a mistrial. The question to Dr. Leggett whether his evaluation was identical with that of Dr. Patil was not answered. The questions to Dr. Turfboer as to the contents of Dr. Patil's and Dr. Wilson's reports were not answered. Objections to both of these questions were sustained. When defendant finally objected to Dr. Turfboer's testimony that his opinion was not consistent with the report from Fulton or Dr. Wilson's report, the court sustained defendant's objection. Dr. Wilson's testimony that Drs. Leggett and Patil essentially agreed with each other and with him was volunteered, and an objection thereto was sustained. In none of these instances did defense counsel request that the objectionable questions or answers be stricken from the record and the jury instructed to disregard them. The court offered to instruct the jury to disregard the voluntary statement of Dr. Wilson but defense counsel did not accept the offer. In each instance defendant should have requested that the improper question or statement be stricken and the jury instructed to disregard it. This would have given the court an opportunity to consider corrective action short of a mistrial. *State v. Cuckovich*, 485 S.W.2d 16, 24[13] (Mo. banc 1972). No such request was made at any time. The only remedy defendant requested was the harsh and stringent remedy of a mistrial. The court granted all the relief defendant asked for, except a mistrial. Whether a mistrial should be declared is a matter within the sound discretion of the trial judge, who observes the proceedings and therefore is in a better position than the appellate court to evaluate the prejudicial or non-prejudicial effect of the incident and the possibility that the error can be corrected short of aborting the entire trial. *State v. Smith*, 431 S.W.2d 74, 82, 83 (Mo. 1968); *State v. Parker*, 476 S.W.2d 513 (Mo. 1972). The judge felt from all he saw and heard that the jury had not been sufficiently aware of the import of the references to the Fulton report to warrant the drastic step of mistrial, and in the exercise of his judicial discretion, the judge denied the several motions for mistrial. We cannot say

that in so doing the court abused its discretion. *State v. Lira,* 372 S.W.2d 80, 82, 83 (Mo.1963).

Judgment affirmed.

DONNELLY, C.J., and RENDLEN and MORGAN, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

WELLIVER, J., dissents in separate dissenting opinion filed and concurs in separate dissenting opinion of SEILER, J.

BARDGETT, J., dissents and concurs in separate dissenting opinion of SEILER, J.

HIGGINS, J., not sitting.

SEILER, Judge, dissenting.

I respectfully dissent. I never thought I would see the day when this court would say that a client by pleading a legitimate defense—insanity—would thereby waive the attorney-client privilege and make available to the prosecution his confidential communications to his lawyer. By sheer judicial fiat, contrary to our statute, § 491.-060(3) RSMo 1978, and contrary to what the vast majority of other courts have held and with no judicial support whatever other than a single poorly reasoned New York decision, the court is saying to defendants: Beware the insanity defense, because if used, whatever you or your lawyer say to each other is fair game for the prosecution and must be revealed. This is incredible, yet here it is. "[A] defendant who pleads insanity waives all other privileges, including the attorney-client privilege", says the principal opinion. In affirming this conviction, the principal opinion writes bad law.

The principal opinion states only a few of the facts. To understand what is involved here, the reader should be aware of the following: On May 25, 1976, defendant, for no apparent reason, killed the victim, Billy Joe Kralicek, in the Jasper County jail by beating the victim about the head and shoulders with a heavy metal mop wringer. Both defendant and the victim were inmates of the jail. Defendant was in the jail because of having called the sheriff's department and his parole officer around 3:00 a.m., asking to be taken into protective custody because he believed he was the victim of a communist conspiracy. The deputies put defendant in the holding tank.

Without taking space here to go into great detail as to defendant's strange conduct on the days in question, defendant explained to his parole officer that he was a federal undercover narcotics agent investigating a communist conspiracy, that he was under control of a communist brain transmitter and that he had taken some street drugs and had made a trip to Kansas City. On these grounds, the parole officer had him arrested for violation of parole. This resulted in defendant's being moved from the holding cell to a dormitory cell which housed other prisoners, including the victim. Later in the day he tried to place a telephone call to God and then about 9:00 p.m., without provocation, started beating the victim Kralicek with the mop wringer, yelling that Kralicek was the devil and needed to be killed. Defendant is a relatively small man, but efforts by the jailers and other inmates (about six were in the same cell) failed to subdue him. He was finally stopped with tear gas. After the attack defendant stated the victim was a "dynamite and gun runner for the conspiracy" and further that he recognized the turnkey as another member of the conspiracy.

Prior to May 25, the date of the killing, defendant had been behaving irrationally. These episodes included chopping up his car, which he had recently purchased, with an axe; spending an entire night with his girlfriend at nearby chat piles praying in order to conceive a child; quitting his job because his employer was part of the communist conspiracy; and believing that someone had contaminated the water supply to his trailer with drugs. Defendant, particularly since January 1976, had a history of drug abuse, especially in use of amphetamines. In his discussion with his parole officer on the morning of the killing, he said that he had had three Quaaludes, and then had taken three "bird eggs" (apparently an amphetamine) to counteract the effect of the Quaa-

ludes. Also, he related that he had been slipped 750 mg. of LSD in an ice cream cone one or two days before coming to jail. However, he denied he was under the influence of drugs at that time. Furthermore, testimony by experts and non-experts was that amphetamines would not produce the symptoms exhibited by defendant.

Based on these facts, defendant's court-appointed attorney considered a defense of not guilty by reason of mental disease or defect. His theory was that defendant was suffering from a toxic psychosis. "A person is not responsible for criminal conduct if as a result of mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law." § 552.030.1, RSMo 1969. Furthermore, evidence of such mental disease or defect is admissible "[t]o prove that the defendant did or did not have a state of mind which is an element of the offense . . . ." § 552.030.3(1), RSMo 1969. "The terms 'mental disease or defect' do not include alcoholism without psychosis or drug abuse without psychosis . . . ." § 552.010, RSMo 1969.

Defendant, prior to trial, underwent two mental examinations at Fulton State Hospital. He was also examined by a defense retained psychiatrist, Dr. Turfboer, who concluded that defendant suffered from a toxic psychosis excluding criminal responsibility. Defense attorney hired a second psychiatrist, Dr. Roy Wilson of the Smith-Glynn-Callaway Clinic in Springfield, to get a second opinion. Defendant's mother paid for this examination. Contrary to defense counsel's expectations, Dr. Wilson concluded that defendant was not suffering from a mental disease or defect that would exclude responsibility. Thus, counsel decided not to call Dr. Wilson as a defense witness. This was an entirely proper decision for defense counsel to make, and as pointed out later herein, had this been a civil case, the opposite side could not have used Dr. Wilson as a witness or obtained a copy of his report.

After Dr. Wilson refused to furnish the state with a copy of his report prior to trial, the state moved on February 28, 1980, for a court order to compel disclosure by defendant of Dr. Wilson's report. The defense filed suggestions in opposition and a motion to suppress Dr. Wilson's testimony. After hearing, the trial court sustained the state's motion for an order to disclose and overruled defendant's motion to suppress. Pursuant to court order, defendant disclosed Dr. Wilson's report to the state. Also, the state called as a rebuttal witness Dr. Wilson, who testified, over objection, as to his opinion of defendant's mental condition.

On appeal defendant claims that the trial court erred in ordering disclosure of Dr. Wilson's report and in allowing Dr. Wilson to testify for the state in rebuttal. This action, it is claimed, is erroneous because this action violated the attorney-client privilege, the physician-patient privilege, the defendant's fifth amendment rights, and the defendant's sixth amendment right to effective assistance of counsel.

We should hold, along with the vast majority of the jurisdictions that have decided the question,[1] that the report of a psychiatrist who is hired and paid for by the defendant and who is *not* to be called as a witness for the defense is not subject to disclosure and such a psychiatrist may not be called as a witness by the state. We should find persuasive, and the principal opinion makes no effort to come to grips with, the reasoning of the courts which have based the decision on the communications to the psychiatrist as being within the compass of and as an adjunct to the attor-

---

1. *See United States v. Alvarez,* 519 F.2d 1036 (3d Cir.1975); *Houston v. State,* 602 P.2d 784 (Alaska 1979); *People v. Lines,* 13 Cal.3d 500, 531 P.2d 793, 119 Cal.Rptr. 225 (1975); *State v. Toste,* 178 Conn. 626, 424 A.2d 293 (1979); *Pouncy v. State,* 353 So.2d 640 (Fla.App.1977); *People ex rel. Bowman v. Woodward,* 63 Ill.2d 382, 349 N.E.2d 57 (1976); *State v. Pratt,* 284 Md. 516, 398 A.2d 421 (1979); *People v. Hilliker,* 29 Mich.App. 543, 185 N.W.2d 831 (1971); *State v. Kociolek,* 23 N.J. 400, 129 A.2d 417 (1957). *See generally,* Note, *Protecting the Confidentiality of Pretrial Psychiatric Disclosures: A Survey of Standards,* 51 N.Y.U.L.Rev. 409 (1976).

ney-client privilege. This is not a broadening of the privilege, as contended by the principal opinion, but is a recognition of the fact, in a situation which has not yet been presented to the Missouri courts, that to be effective, the privilege must extend to the consultations which the attorney arranges with an expert witness in an effort to determine whether the defense of not guilty by reason of mental disease or defect is available, something the attorney cannot know without an examination for that purpose, not for treatment. Under the principal opinion the attorney must stick his (and his client's) head into a noose in order to ascertain this vital information.

In *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961), the issue was whether communications to an accountant are protected by the attorney-client privilege. Analogizing the situation to the need for an interpreter when the client speaks a foreign language, Judge Friendly stated that in a complicated tax case "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and lawyer which the privilege is designed to permit." *Id.* at 922. "What is vital to the privilege is that the communication [to the accountant] be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer.*" *Id.* (Friendly, J.) (emphasis in original).

Thereafter, in a similar situation involving, as here, psychiatric testimony, in *United States v. Alvarez,* 519 F.2d 1036 (3d Cir.1975), the court stated:

We see no distinction between the need of defense counsel for expert assistance in accounting matters and the same need in matters of psychiatry. The effective assistance of counsel with respect to the preparation of an insanity defense demands recognition that a defendant be as free to communicate with a psychiatric expert as with the attorney he is assisting. If the expert is later used as a witness on behalf of the defendant, obviously the cloak of privilege ends. But when, as here, the defendant does not call the expert the same privilege applies with respect to communications from the defendant as applies to such communications to the attorney himself.

*Id.* at 1046.

In *Pouncy v. State,* 353 So.2d 640 (Fla. App.1977), the court stated the issue as follows:

Whether the doctrine of attorney-client privilege bars the State from deposing and calling as witnesses psychiatrists *hired by an accused or his counsel* for the sole purpose of *aiding* the accused and his counsel *in the preparation* of his defense, i.e. insanity.

*Id.* at 641 (emphasis in original). *Pouncy,* although cited by the principal opinion, is a strong case in favor of defendant's position. In *Pouncy* the Florida court ruled that the attorney-client privilege barred the state from deposing and calling as witnesses psychiatrists hired by the defense for the sole purpose of aiding counsel in the preparation of his defense of insanity, which is the same situation we have in the present case. The Florida court quoted the following persuasive reasoning from *United States v. Alvarez,* 519 F.2d 1036 (3d Cir.1975):

"[T]he effective assistance of counsel with respect to the preparation of an insanity defense demands recognition that a defendant be as free to communicate with a psychiatric expert as with the attorney he is assisting. If the expert is later used as a witness on behalf of the defendant, obviously the cloak of the privilege ends. But when, as here, the defendant does not call the expert the same privilege applies with respect to communications from the defendant as applies to such communications to the attorney himself.

\* \* \* \* \* \*

. . . The issue here is whether a defense counsel on a case involving a potential defense of insanity must run the risk that a psychiatric expert whom he hires to advise him with respect to the defendant's mental condition may be forced to be an involuntary government witness. The effect of such a rule would, we think, have the inevitable effect· of depriving

defendants of the effective assistance of counsel in such cases. A psychiatrist will of necessity make inquiry about the facts surrounding the alleged crime, just as the attorney will. Disclosures made to the attorney cannot be used to furnish proof in the government's case. Disclosures made to the attorney's expert should be equally unavailable, at least until he is placed on the witness stand. The attorney must be free to make an informed judgment with respect to the best course of the defense without the inhibition of creating a potential government witness."

The same situation was presented in *State v. Pratt,* 284 Md. 516, 398 A.2d 421 (1979), with an identical holding. There the court held that it was error to permit a defense employed psychiatrist to testify for the state because it violated the attorney-client privilege. In discussing its rationale for so holding the court stated:

> Initially we observe that, given the complexities of modern existence, few if any lawyers could, as a practical matter, represent the interest of their clients without a variety of nonlegal assistance. Recognizing this limitation, it is now almost universally accepted in this country that the scope of the attorney-client privilege, at least in criminal causes, embraces those agents whose services are required by the attorney in order that he may properly prepare his client's case. Consequently, in line with the views of the vast majority of the courts in our sister jurisdictions, we have no hesitancy in concluding that in criminal causes communications made by a defendant to an expert in order to equip that expert with the necessary information to provide the defendant's attorney with the tools to aid him in giving his client proper legal advice are within the scope of the attorney-client privilege.... This is uniquely so in cases concerning the question of a criminal defendant's sanity, because the need of an attorney to consult with a qualified medical expert is paramount. Such a medical expert not only provides testimony that usually is necessary at tri-

al to support an insanity defense, but also "attunes the lay attorney to unfamiliar but central medical concepts and enables him, as an initial matter, to assess the soundness and advisability of offering the defense . . . and perhaps most importantly, . . . permits a lawyer inexpert in the science of psychiatry to probe intelligently the foundations of adverse testimony." *United States v. Taylor,* 437 F.2d 371, 377 n. 9 (4th Cir.1971).

*Id.* at 423–24.

Section 491.060(3), RSMo 1978, declares the common law rule; it neither limits nor diminishes the attorney-client privilege. *State ex rel. Great American Insurance Co. v. Smith,* 574 S.W.2d 379, 382 (Mo. banc 1978). Until the present case, Missouri courts have adopted a broad interpretation of the attorney-client privilege. For example, this court in *State ex rel. Cain v. Barker,* 540 S.W.2d 50 (Mo. banc 1976), even held that statements made by the client to a third party, an insurance adjuster, were within the attorney-client privilege and thus not discoverable. It is anomalous to have a more restrictive interpretation of the privilege in the criminal context where it is closely linked to the sixth amendment right to effective assistance of counsel.

Another anomaly is that the question presented in the instant case would not arise under the civil rules because there is no provision for discovery of experts retained but not to be called. Rule 56.-01(b)(4)(a) provides for discovering through interrogation the identity of experts to be called and Rule 56.01(b)(4)(b) provides for discovering "by deposition the facts and opinions to which the expert is expected to testify", but not of an expert who is not to testify. On what basis is it fair or consistent with getting at the true facts to withhold the testimony or evidence of a psychiatrist who examines as an expert witness, but who is not to be called as a witness at trial in a civil case, while permitting just the opposite in a criminal case? We should hold that the defendant does not waive the attorney-client privilege unless the defense retained psychiatrist is to be a defense witness, as we do in civil cases.

The principal opinion is naive and not being realistic when it says that Dr. Wilson was not acting as a member of defense counsel's investigative staff when examining to see whether the insanity defense was possible. Any sensible defense counsel would want to know about that—and without having to pay the price of furnishing a powerful witness for the opposition if the doctor's opinion is not helpful to the defense. The principal opinion says this is only of minor importance.

But there is respected authority to the contrary, not met or discussed by the principal opinion, pointing out the chilling effect such a rule would have and its effect on a defendant's right to effective assistance of counsel.

> [A] defense counsel in a case involving a potential defense of insanity must run the risk that a psychiatric expert whom he hires to advise him with respect to the defendant's mental condition may be forced to be an involuntary government witness. *The effect of such a rule would, we think, have the inevitable effect of depriving defendants of the effective assistance of counsel in such cases....* The attorney must be free to make an informed decision with respect to the best course for the defense without the inhibition of creating a potential government witness.

*United States v. Alvarez, supra,* 519 F.2d at 1046–47 (3d Cir.1975) (emphasis added).

The *Pratt* court stated the potential effects as follows:

> Breaching the attorney-client privilege in this situation also would have the effect of inhibiting the free exercise of a defense attorney's informed judgment by confronting him with the likelihood that, in taking a step obviously crucial to his client's defense, he is creating a potential government witness who theretofore did not exist.... The possible impact upon the federal and State constitutional rights of the defendant of a rule permitting such testimony further persuades us that we should be reluctant to hold there

is a waiver, under the circumstances here, of the attorney-client privilege.

*State v. Pratt, supra,* 398 A.2d at 426.

Nor does the principal opinion consider the resulting prejudice to the defendant. "[T]he fact that the source of adverse testimony at the trial is an expert originally employed by the defendant, rather than the state, will, if it is made known to the jury, almost certainly carry added weight." *United States ex rel. Edney v. Smith,* 425 F.Supp. 1038, 1053 (E.D.N.Y.1976), aff'd, 556 F.2d 556 (2d Cir.), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977). In the instant case the jury was in fact informed that Dr. Wilson was employed by the defendant. Further prejudice may result because a defendant would be less inclined to be completely candid with a defense-employed psychiatrist if he knew that the psychiatrist could be a witness against him. *Id.*

The Missouri cases cited by the principal opinion do not even purport to deal with the situation before us—an expert witness employed by the defense who is not to testify in the context of the attorney-client privilege. The cited cases all pertain to waiver of the physician-patient privilege, which is not the question before us. None of the Missouri cases cited discuss whether or not an examination by an expert to see whether a particular medical defense is available is a necessary adjunct of the representation by the attorney of his client and should be viewed the same as communications made by the client to his lawyer in determining what defenses are available.

As shown above, the vast majority of cases in other jurisdictions hold the communications are privileged as an adjunct of the attorney-client privilege. The only case to the contrary cited by the principal opinion is the New York case, *People v. Edney,* 30 N.Y.2d 620, 385 N.Y.S.2d 23, 350 N.E.2d 400 (1976). The reasoning of that case is that inasmuch as a defendant in New York who pleads insanity can be made to undergo an examination by a prosecution psychiatrist, the defendant therefore reveals to the prosecution the very facts which the physician-

patient privilege would hold secret. But, the reasoning goes, if he does not plead insanity no waiver would occur and any information divulged to the psychiatrist (evidently referring to his own psychiatrist) would remain privileged. This is difficult to follow because, of course, if we make the assumption that the defendant does not plead insanity, there is no need for a psychiatrist anyway. The case before us is one where the defendant did plead insanity. Additionally, the New York case proceeds on the unrealistic assumption that defendants will in fact be as open with the prosecution psychiatrists as they would be with psychiatrists employed by their own counsel. Why fool ourselves about this?

The principal opinion also cites *United States ex rel. Edney v. Smith,* 425 F.Supp. 1038 (E.D.N.Y.1976), *aff'd without opinion,* 556 F.2d 556 (2nd Cir.1977), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977), but this case states that the preferred rule is the one advocated in this dissent, pointing out that the purpose of the psychiatric examination is to enable the lawyer to explore more effectively the available defenses. *Id.* at 1044. The case states further that communications where the client consults the psychiatrist to obtain a recommendation for litigation purposes are protected by the attorney-client privilege in most states even though there is no protection under physician-patient privilege due to a waiver from putting the patient's condition in issue in the case. *Id.* at 1047. The court also points out that the law on the question in other states is almost uniformly contrary to New York's. "Relying on the attorney-client privilege, they do not permit defendant's psychiatrist to be called." *Id.* at 1053. The court pointed out further that the New York rule was prejudicial to the defendant in that an expert employed by the defendant and used against him by the state would carry "added weight" with the jury and also in that it inevitably would cause defendants to be less open and candid with a defense employed psychiatrist. The cited case is strongly in favor of the rule here advocated.

The hypothetical given by the principal opinion about a defendant being able to compel disclosure of the helpful opinion of the prosecutor's examining psychiatrist who concludes, after examination, that defendant in truth is insane does not mean that Dr. Wilson should have been available to the prosecution in the case at bar. In the hypothetical, for the prosecutor to have suppressed and not made available the evidence favorable to the defendant, would have been reversible error as denial of due process to the defendant under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), even if there were no criminal discovery rule. As a general proposition it can be said, as the principal opinion does, that "It is a poor rule that does not work both ways", but the aphorism does not apply here. Just because the defendant in the hypothetical is entitled to the report of the prosecutor's psychiatrist (for due process reasons, as stated above) does not mean the state is entitled to Dr. Wilson's report or testimony here, because the state has no due process or *Brady v. Maryland* constitutional right against the defendant. The state cannot charge defendant with violation of due process. Denying the state the right to call Dr. Wilson as a witness will in no way diminish or affect the reciprocal rules of discovery in criminal cases, as is seen by the fact that in civil cases we do not permit one in Dr. Wilson's position to be called by the opposite party; this has not in any way been devastating or disastrous to discovery.

Accordingly, because the trial court erred by requiring disclosure of Dr. Wilson's report and allowing the state, over objection, to call him as a rebuttal witness, defendant's conviction should be reversed and the cause should be remanded for a new trial.

WELLIVER, Judge, dissenting.

I respectfully dissent.

I join Judge Seiler's dissenting opinion, but I write separately to emphasize my belief that the principal opinion places defense counsel in an untenable position that, in the vast majority of cases, will cause

them to render ineffective assistance of counsel.

An attorney is not a psychiatrist. In order effectively to represent a criminal defendant to whom the insanity defense potentially is available, therefore, the attorney requires the assistance of an expert during three critical phases of the representation. First, an expert is necessary if the attorney is to determine whether the insanity defense indeed is appropriate. Second, if the defense is appropriate, the attorney needs expert assistance for adequate pretrial preparation. Finally, the attorney may need the expert available in the courtroom in order both to present the defense adequately and to cross-examine the prosecution's expert witnesses effectively.

The Supreme Court has held that the sixth amendment guarantee of the right to counsel, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), contemplates effective counsel and that a state's denial of effective assistance of counsel violates due process. *Hawk v. Olson,* 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945). *See Reece v. Georgia,* 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). As a result, other courts have recognized that attorneys often require the assistance of experts in order to represent their clients adequately and have gone so far as to hold that an indigent defendant's due process right to effective counsel encompasses his right to the appointment of an expert to assist in the preparation of his defense. *See, e.g., Williams v. Martin,* 618 F.2d 1021 (4th Cir.1980); *United States v. Hartfield,* 513 F.2d 254 (9th Cir.1975); *Hintz v. Beto,* 379 F.2d 937 (5th Cir.1967); *United States ex rel. Robinson v. Pate,* 345 F.2d 691 (7th Cir.1965), *aff'd in part and remanded on other grounds,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Bush v. McCollum,* 231 F.Supp. 560 (N.D.Tex.1964), *aff'd,* 344 F.2d 672 (5th Cir.1965). *See also United States v. Stifel,* 433 F.2d 431 (6th Cir.1970) (dictum), *cert. denied,* 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971); *Lee v. Habib,* 424 F.2d 891 (D.C.Cir.1970) (dictum); *Greer v. Beto,* 379 F.2d 923 (5th Cir.1967) (dictum). This Court has recognized that a defendant has the right "to an examination by a specialist at the expense of the State" if it is "essential to due process of law." *State v. Chapman,* 365 S.W.2d 551, 552 (Mo.1963).

We do not deal here with a total prohibition of expert assistance. The principal opinion's narrow definition of the attorney-client privilege, however, produces just as great an evil. A defense attorney who thinks the insanity defense may be appropriate now faces the unenviable dilemma whether to utilize the defense without expert assistance and inevitably render ineffective assistance or to seek expert assistance knowing that by doing so he may supply ammunition - for the prosecution. Only if the psychiatric examination produces the result that the attorney seeks can the attorney's representation be effective. The principal opinion's retrenchment from established due process doctrine is, in my view, ill-considered and unwarranted.